## Wentworth *v.* Doliner, Appellant.

Argued March 21, 1960. Before Jones, C. J., Musmanno, Jones, Cohen, Bok and Eagen, JJ.

*Stuart A. Culbertson*, with him *Paul E. Allen*, for appellants.

*Kenneth W. Rice*, with him *Eckles, Stegner & Blystone*, for appellees.

OPINION BY MR. JUSTICE MUSMANNO, May 4, 1960:

Two cases, consolidated for trial, are involved in this appeal, but since the questions on appeal are identical in both instances, the cases will be treated as one. The plaintiffs sustained injuries as the result of an automobile accident which occurred in Crawford County. At the ensuing trial, the jury returned verdicts for the defendant and the trial court ordered a new trial on the basis that the verdicts were against the weight

of the evidence. A review of the record supports the lower court's order and we see no necessity for discussing the evidence which justified the action of the court below.

However, it should be said, so that on the retrial a similar error will not recur, that had the court not reversed for the reason given, a new trial would have been imperative because of the frequent references made during the trial to "drinking" concerning the plaintiff, William E. Wentworth.

William E. Wentworth was the driver of a Dodge automobile which he was operating on Route 322 in an eastwardly direction on September 4, 1955, at about 3 o'clock in the morning. The owner of the car, Homer Harvey, and a Judy Costello occupied the front seat with him. Other passengers, with whom we are not concerned in this appeal, sat in the rear seat of the car. When the Dodge car arrived at the intersection of Route 322 and Route 98, a Mercury automobile, being driven by the defendant Frank Doliner, on Route 98, ignored the Stop sign at this point and collided with the Dodge car.

In the cross-examination of Wentworth, it developed that, prior to the time of the collision, he and his friends had visited Conneaut Lake Park and a dancing-restaurant place called the Cow Shed. Defendant's counsel asked Wentworth: "You had something to drink at Conneaut Lake Park, hadn't you?", Wentworth replied: "I had nothing to drink that night." Counsel then asked: "You didn't?" And Wentworth replied: "Not a drop."

Later, defendant's counsel asked and Wentworth replied as follows: "Q. How long did you stay at the Cow Shed? A. Well, we got there around midnight and left there when they closed. Q. What time? A. Oh, about one o'clock. Q. They closed and then you went

from there over to the Park? A. That's right. Q. You say it's a place to eat and drink? A. Dance. Q. Well dancing and drinking, too? A. That's right. Q. Were you drinking, too? A. No, sir."

At this point plaintiff's counsel objected: "Well, if the court please, I don't think this is competent for him to ask questions about drinking and so forth, unless he proposes to show that these people or that he the driver of the car was under the influence."

The court ruled that since Wentworth had said he had not been drinking, "I don't see how you are harmed by it."

Defendant's counsel then asked Wentworth: "They serve intoxicating beverages at this Cow Shed, do they not?" And Wentworth replied: "Yes, sir."

Although the court had observed that the plaintiffs' case had not been harmed by the references to drinking, plaintiffs' counsel assumed that he was called upon to bring out, with his own questioning, that Wentworth did not imbibe any alcohol that night. Plaintiffs' counsel explained (in his brief) his position in this regard: "After this ruling by the court it seemed to plaintiffs' counsel (perhaps incorrectly) that the best course to pursue thereafter would be to develop by the testimony of his own witnesses that plaintiff Wentworth had not been drinking. This, of course, resulted in a serious disadvantage inasmuch as the door was then left wide open for defendant's counsel to generally cross-examine plaintiffs' witnesses on the subject of plaintiffs and their own drinking and the visitation of places where drinks were served or sold."

Plaintiffs' counsel's observations are probably correct. Defendant's counsel did walk into the door which plaintiffs' counsel had opened and, as a consequence, the matter of drinking was gone into at such length and with such zest that the trial record is almost audi-

ble with clinking glasses, gurgling vodka and wassail, intermingled with noisy consumption of one-foot-long hot dogs, pizza and milk shakes. One can easily believe that Wentworth and his friends were enjoying themselves, but this enjoyment had nothing to do with Wentworth's responsibility as a motorist, since the stream of alcohol apparently running through the gulf of the evening did not touch him. In the whole record there is not one word of testimony that Wentworth himself drank a drop of intoxicating liquor the night of the accident. Yet, the exhalations from the flow of vodka and other undescribed alcoholic refreshments which permeated the testimony could not help but in some way envelop Wentworth and make him appear, in the eyes of the jury, as one who somehow became intoxicated by association, propinquity, and mere breathing.

In its opinion ordering a new trial, the court below said: "Defendant's counsel managed to leave the impression with the jury that plaintiff had been drinking in spite of the fact that no competent evidence that he had consumed any intoxicating liquors whatever was produced."

This was probably true, but the fault was not entirely that of defendant's counsel. Plaintiffs' counsel contributed as much as defendant's counsel to the alcoholic atmosphere in which the trial finally swam, by his extended interrogation of the various witnesses as to whether they had seen Wentworth drinking.

The word "drinking", where alcohol is involved, carries the inevitable connotation of *considerable* drinking. Certainly, no one familiar with the idioms of current language would say of a person, who had consumed a single glass of beer, that he had been "drinking." And yet, in technical correctness, the swallowing of the smallest quantity of a beverage would be "drinking." If a witness were asked: "Did you do any

drinking?" he would be required to answer "Yes", even though the extent of his tippling did not go beyond a glass of the mildest ale.

Thus it is that the rules of evidence, in the interests of fairness, require a cross-examiner to approach the question of intoxicating liquor with circumspection and maximum appreciation of the misconceptions which can so easily be created on the subject. Sometimes mere questions can be as damning as proof. Accordingly, no one can doubt that a witness's credibility would be seriously damaged if he were asked: "Isn't it a fact that you served time in the penitentiary?" even though he answered the question in the negative. Also, for a cross-examiner to put a degrading question to a witness, knowing that he has no proof to substantiate the innuendo constitutes grievous trial error. Cross-examination is one of the most formidable engines for achieving justice that operates in a controverted trial, but if it is allowed to leave the track of relevancy it can wreck the whole plan and purpose of a trial.

Of course, this does not mean that a cross-examiner is precluded from asking questions which are pertinent and which are calculated to ferret out what he has reason to believe is a concealed truth. Defendant's counsel committed no breach of trial propriety in putting his first question to Wentworth as to whether he had been drinking at Conneaut Lake Park. He had the right to probe that possibility. Nor was he at fault in putting a second question on the subject, in view of some of the witness's answers. The trial error occurred when both counsel and the court allowed the trial to drift on a tide of alcoholic debate far away from the principal issue as to who was responsible for the accident in which the plaintiffs were allegedly injured.

In *Critzer v. Donovan*, 289 Pa. 381, 385, which involved an automobile accident, testimony was allowed

to the effect that odor of alcohol was detected on the breath of the driver of the truck which injured the plaintiff. There was no evidence that the driver was intoxicated at the time of the accident. This Court ruled such testimony improper. Justice KEPHART said: "Since there was no evidence that Kane, the driver, was intoxicated, was the testimony otherwise competent? In view of the issues here raised we think it was not competent for any purpose. Proof of the odor of liquor is admissible for certain purposes, but its natural consequence is not reckless driving. Certainly if the driver was not intoxicated or driving while under the influence of liquor, the fact that he may have taken a drink has no bearing on the question of his negligence. Such testimony directly tends to raise in the minds of the jurors another issue,—whether he was intoxicated,—which, in the absence of other evidence, should not have entered into the determination of the case. Moreover, this question was of such a nature as to create an unfair prejudice against the driver and the owner."

In the case of *Fisher v. Dye*, 386 Pa. 141, this Court said: "While proof of intoxication is relevant where reckless or careless driving of an automobile is the matter at issue, the mere fact of drinking intoxicating liquor is not admissible, being unfairly prejudicial, unless it reasonably establishes a degree of intoxication which proves unfitness to drive."

Another error of consequence crept into the trial of the case at bar. Defendant's counsel asked the witness, State Trooper Roy Hogan, if a report he had made on Wentworth contained anything as to whether or not "he had been drinking." When Hogan replied that the report did contain such information, defendant's counsel asked: "What was it?" and the witness replied: "That he had been drinking at the time."

There was no evidence that Trooper Hogan had seen Wentworth at the time of the accident or that he had questioned him about drinking. Thus his statement was obviously hearsay, and particularly dangerous hearsay since it came from the mouth of a man representing the law. The court properly said: "I don't think this is competent, something he put in his report. I think you ought to make a motion to strike it out and I will tell the jury to disregard it."

But telling the jury to disregard the statement hardly cured the wound which had been inflicted on the body of strict impartiality, especially in view of all the other lacerations inflicted during the trial by the many sharp questions directed to the subject of drinking.

The orders of the court below granting a new trial are affirmed.

Mr. Justice Bok concurs in the result.