## Cook v. Philadelphia Transportation Company, Appellant.

Argued January 16, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Langdon W. Harris, III,* for appellant.

*John R. Padova,* with him *Edward B. Bergman,* and *Solo, Bergman and Trommer,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, April 21, 1964:

The litigation in this case revolves around an unfortunate but more or less conventional motor vehicle accident. The appeal, however, has an unusual feature in that the error most urged by the appellant, has to do, not with the manner in which the accident oc-

curred, but is directed toward the phraseology employed in describing a liquor-dispensing establishment known as the "Crazy Bar."

The plaintiff, Mrs. Rosa Lee Cook, testified that in the early morning (about 1:30 or 2 o'clock) of December 6, 1958, she was struck by a bus belonging to the defendant, Philadelphia Transportation Company, as she was crossing 52nd Street in Philadelphia at its intersection with Lancaster Avenue. The defendant produced a witness, Mrs. Florence Devlin, who testified that Mrs. Cook started across 52nd Street at a point some 90 feet south of Lancaster, that is to say she crossed in the middle of a block. The point 90 feet south of Lancaster is on a line directly opposite an exit from the place known as the "Crazy Bar." The trial judge ruled, upon due representation by plaintiff's counsel, that during the trial the witnesses and lawyers could not use the name "Crazy Bar," because this might create a prejudice in the minds of the jury, suggesting on the part of the plaintiff an inebriacy or excessive use of intoxicants of which there was no evidence whatsoever.

About three hours before the accident Mrs. Cook consumed a glass or two of beer at the home of a Mrs. Sanders. Later, she, Mrs. Sanders and a Mrs. Moseley went out looking for a Mrs. Alice Brown. They were informed that Mrs. Brown might have gone to a building "somewhere near the southeast corner of 52nd and Lancaster". Mrs. Cook went into this building, asked for Mrs. Brown and, not finding her, left. She remained in this building for not more than five or ten minutes, and while there drank no beverage. As she came out of the building on the *Lancaster* side, she started across 52nd Street.

Defendant's counsel cross-examined Mrs. Cook at length on all phases of the accident. In addition to Mrs. Devlin, whose testimony, as indicated, was to the

effect that Mrs. Cook crossed in the middle of a block, the defendant called a police officer who testified that when he appeared on the scene minutes after the accident, he found the body of the plaintiff lying in the street in front of the defendant's bus at a point 90 feet south of Lancaster Avenue. The bus operator testified that the plaintiff ran out in front of his bus south of Lancaster Avenue. The exact point of the crossing was, of course, a question of fact for the jury, which resolved it in favor of the plaintiff and returned a verdict in favor of the plaintiff.

The defendant was allowed the utmost latitude in developing its case and in no way was prevented from presenting all evidence it deemed helpful to its defense, nor was its counsel impeded in any manner in his cross-examination of the plaintiff and her witnesses.

Geographically, narratively, and graphically the jury got a complete picture of how the accident happened. They even were aided in this picturization of the pivotal event by a blackboard sketch of the scene of the accident, to which reference was made during the trial as to the places, persons, vehicles and different locations participating in the unfolding of the story of the collision between the bus and the plaintiff.

Whether the plaintiff came out of a Five-and-ten cent store before she crossed the street or a place called the "Crazy Bar" had absolutely nothing to do with the manner in which she received her injuries. The vital evidence as to how the accident occurred did not take hold until Mrs. Cook left the curb of 52nd Street to negotiate its crossing. Defendant's counsel complains that he should have been allowed to bring out that the plaintiff emerged from a place with the notorious name of "Crazy Bar" before she committed herself to 52nd Street. To begin with, she denied that she came out of that place at that time but even if she had, there was not an iota of evidence that, being in the taproom,

had in any way incapacitated her from carefully, prudently and soberly crossing the street.

It is impossible to see how the defendant's case—legally, morally, fairly and justly—would have been improved by witnesses referring to the building 90 feet south of Lancaster Avenue as the "Crazy Bar." On the other hand, it is obvious that the plaintiff could have been irreparably prejudiced by testimony that she came out of a place called the "Crazy Bar," especially in view of the fact that the accident occurred about 2 a.m., the bewitching hour many people are willing to believe can be an intoxicating hour when associated with a nocturnal drinking establishment. Had there been any evidence of intoxication or copious drinking on the part of Mrs. Cook, or that she had staggered or that there was liquor on her breath, there might be some logical support to the defendant's insistence that it should have been allowed to call the establishment by its wild cognomen the "Crazy Bar." But, the record is bone dry of any such evidence. Thus, the "Crazy Bar" was wholly alien to the accident, in no way contributed to the happening or an explanation of the accident, and the only possible advantage the defendant could have obtained by filling the jury's ears with the cry of "Crazy Bar," would have been an advantage it was not only not entitled to, but which might well have brought about a mistrial.

This Court has said in language that cannot be mistaken that unless there is evidence of excessive alcoholic consumption in a case such as this, it is error to dwell on "drinking."

In *Critzer v. Donovan*, 289 Pa. 381, Chief Justice KEPHART said: "Certainly if the driver was not intoxicated or driving while under the influence of liquor, the fact that he may have taken a drink has no bearing on the question of his negligence. Such testimony directly tends to raise in the minds of the jurors another

issue,—whether he was intoxicated,—which, in the absence of other evidence, should not have entered into the determination of the case. Moreover, this question was of such nature as to create an unfair prejudice against the driver and the owner."

In *Fisher v. Dye,* 386 Pa. 141, this Court said: "While proof of intoxication is relevant where reckless or careless driving of an automobile is the matter at issue, the mere fact of drinking intoxicating liquor is not admissible, being unfairly prejudicial, unless it reasonably establishes a degree of intoxication which proves unfitness to drive."

In *Wentworth v. Doliner,* 399 Pa. 356, we said: "The word 'drinking,' where alcohol is involved, carries the inevitable connotation of *considerable* drinking. Certainly, no one familiar with the idioms of current language would say of a person, who had consumed a single glass of beer, that he had been 'drinking'. And yet, in technical correctness, the swallowing of the smallest quantity of a beverage would be 'drinking.' If a witness were asked: 'Did you do any drinking?' he would be required to answer 'Yes', even though the extent of his tippling did not go beyond a glass of the mildest ale. Thus it is that the rules of evidence, in the interests of fairness, require a cross-examiner to approach the question of intoxicating liquor with circumspection and maximum appreciation of the *misconceptions which can so easily be created on the subject.*" (Emphasis supplied).

If defendant's counsel had been allowed to cross-examine on the beer the plaintiff had imbibed, and the fact that she had visited an establishment answering to the image-creating sobriquet of the "Crazy Bar," a misconception could easily have followed. Defendant's counsel said at the oral argument that if the plaintiff had attended a church that night she would have wanted to testify where she had been. Perhaps

so, but no one could possibly distort the nature of a building of worship, but one might almost automatically form a recklessly exaggerated notion of the inebriating proclivities of a place called the "Crazy Bar." If the premises in question had been called the "Get Drunk Bar", it could scarcely be argued that it would not convey the connotation or innuenda of a place where inebriation was par. Advertising experts specialize on the creation of titles and phrases which of themselves awaken and produce certain psychological reactions which may not coincide with the realities. The incomparable poetic-dramatic bard has told the world that a rose by any other name would smell as sweet, but no one can doubt that if a rose were called Limburger Cheese, its fragrance would diminish in the nostrils of the average smeller. Such is the power of imagination.

The type of instruction given by the trial judge in the matter under discussion was proper, but it should be resorted to only rarely because witnesses in the main should be allowed to tell their stories from the witness stand untrammeledly, subject only to the usual limitations concerning hearsay and so on. However, because of the peculiar circumstances in this case where the defendant, although given the maximum opportunity to do so, could not present any evidence of intoxication or that the plaintiff was in the slightest degree under the influence of liquor, the trial judge exercised judicial wisdom and discretion in ruling out of the case a term which could have improperly prejudiced the plaintiff in the eyes of the jury and in no way, *properly,* have helped the defendant's case.

The defendant also complains that the trial judge in his charge misstated a portion of the testimony given by the witness Mrs. Devlin. This witness testified that she was standing "in front of the oil company, I think, or the coal company," when the plaintiff started across

the street. The trial judge said in his charge that this witness "places the scene [of the accident] at somewhere south of the intersection." Later on the judge said: "Nor do I recall Mrs. Devlin saying that Mrs. Cook came out of a building south of Lancaster Avenue on 52nd Street on the east side and crossed to the west side. I don't recall that." He followed this immediately with: "She may have said it, and you will have to use your recollection again on that." And he had immediately preceded his second reference to Mrs. Devlin with the statement: "You will have to use your own recollection on that, but in any event you don't follow the court's recollection if it disagrees with your recollection in any respect." Sandwiched as was the judge's observation on Mrs. Devlin's testimony in between two admonitions to the jury that they should use their own recollection of the evidence, it is not evident that the jury could have been in any way improperly influenced by the judge's slight momentary deviation from the testimony, if indeed it was a deviation.

Judgment affirmed.

Mr. Chief Justice BELL concurs in the result.