## Fitch, Admx. v. Dolney

*F. Joseph Thomas*, for plaintiff.

*Culbertson & Allen*, for defendant.

THOMAS, P. J., February 2, 1966.—On December 25, 1962, at approximately 3:15 a.m., Samuel G. Fitch,

aged 20, was standing on a highway known as Route 285 in West Fallowfield Township, Crawford County, when he was struck by an automobile operated by defendant, James Dolney. Fitch, his friend and key witness, Hollis van Bockern, and two girl friends had spent most of the evening in the State of Ohio, where they visited several taverns. On returning the girls to their residence in West Fallowfield Township, they parked in the driveway of the girls' residence for about 45 minutes, after which the girls got out and went into the house. Van Bockern backed his car out of the driveway and got stuck in a snow drift. The rear end of the car protruded a few feet into the traveled portion of Route 285. Fitch and van Bockern got out of the car and secured a shovel, and van Bockern was using the shovel to remove snow from around the rear wheels while Fitch was standing in the road watching. A vehicle operated by Gary Knott in a northerly direction on Route 285 approached and stopped on the highway approximately opposite the rear of the van Bockern car. At about this time, James Dolney, defendant, going south on the same road in his vehicle, rounded a curve some 150 feet from the scene at a speed of 30 to 35 miles per hour. When he saw the lights of the Knott car, he took his foot off the gas. When he was 50 feet from Fitch, he saw him for the first time standing on the highway in his lane of travel, facing his oncoming vehicle. Dolney applied his brakes, skidded on the icy pavement and jerked the wheel to the left, but struck Fitch with the front of his car and carried his body several hundred feet down the icy road on the front of his car. Fitch, apparently, was killed on impact.

Fitch's administratrix brought survival and wrongful death actions, and the case was tried before a jury commencing October 14, 1964. The jury returned a verdict for defendant.

Plaintiff moved for a new trial and assigned 13 reasons therefor. We find 11 of these reasons without merit. Two of plaintiff's exceptions are well founded and raise questions regarding admission by the court, over strenuous objection by plaintiff, of evidence of the consumption of alcoholic beverages by the deceased. These reasons for a new trial are as follows:

"5. The Learned Court erred in permitting evidence of the consumption of 3.2 beer by the decedent without any evidence that said consumption in any way affected the decedent or made him intoxicated or under the influence of intoxicating liquor.

"6. The Learned Court erred in permitting evidence of the consumption of 3.2 beer by the decedent when there was no evidence of any causal relationship between the consumption of said beer and the death of the decedent".

In addition, plaintiff took exception to the charge of the court regarding the admission and relevancy of evidence of the consumption of alcoholic beverages of the witness, Hollis van Bockern. This exception at the end of the charge (testimony, page 82) is as follows:

"6. To that portion of the court's charge in which he left it to the jury to determine the effect of the beer on the witness Hollis van Bockern, rather than instructing the jury that the positive testimony of the plaintiff, which was not in any way rebutted, given by the police officer, Phillips, was that van Bockern was not intoxicated, under the influence, and did not in any way act unusually or abnormally".

Plaintiff did not assign this last exception as one of the 13 reasons for new trial. Normally, we would consider plaintiff had waived this exception as a reason for a new trial when it was not restated as one of the formally assigned reasons for a new trial. The testimony and charge were not ordered transcribed prior to argument so neither counsel had the benefit

of reviewing anew the exceptions taken at the time of trial. Under the circumstances, we shall also consider this exception.

The basic issue regarding the testimony involving van Bockern and Fitch is whether the court should have allowed evidence of the consumption of alcoholic beverages to be introduced, in the absence of further evidence that the consumption of these alcoholic beverages induced intoxication or manifested itself in some unusual or abnormal conduct or physical appearance indicating intoxication.[1]

A resume of the pertinent evidence indicates the following: Van Bockern was called by plaintiff to prove the details of the happening of the accident, but was not questioned on direct examination about his whereabouts at earlier times in the evening. Defense counsel proposed crossexamination to show that both van Bockern and Fitch visited several taverns in Ohio earlier in the evening and that each consumed eight or nine alcoholic drinks. Objection was made to the introduction of this testimony, and we ruled that we would allow crossexamination of van Bockern regarding his drinking as the offer to prove substantial drinking might affect his credibility. At the same time, we held that examination of van Bockern regarding the amount of alcoholic beverages consumed by Fitch could not be elicited on crossexamination, as there had been no direct testimony on the same. However, we granted defense counsel the right to examine van Bockern after court recessed, and to then call him as a defense wit-

---

[1] The dilemma of the legal researcher on this point is succinctly set forth in the following statement:

"According to some decisions, the intoxication [of a witness] must be proved by direct evidence, or by the acts and conduct of the witness, and not by the quantity of liquor he had drunk. There is, however, authority to the contrary on this point": 58 Am. Jur., Witnesses, 381, §704.

ness to prove the intoxication of Fitch. Objections to both these court rulings were appropriately made by plaintiff's counsel. The testimony indicates that Fitch and van Bockern met the evening of December 24, 1962, at the Lighthouse Tavern in Andover, Ohio. The time of the meeting was a matter of dispute, as van Bockern testified it was 8:30 or 9 p.m., but the investigating police officer testified that van Bockern told him he first met Fitch at the Lighthouse Tavern at 10:30 p.m. Fitch had been there for some time before van Bockern arrived. Van Bockern explained that in view of the age of both him and Fitch, they were required to show identification cards, and then were served only 3.2 beer, which apparently can be sold to minors between the ages of 18 and 21 in the State of Ohio. At the Lighthouse, van Bockern had three bottles of beer, and Fitch consumed one or two bottles during the time they were at the Lighthouse. Van Bockern testified that Fitch had told him that he had had one or two beers before van Bockern's arrival. At the Lighthouse, they met some friends in the military service and the young ladies. Van Bockern and Fitch then left the Lighthouse in the car to drive the two friends they had met to the Borough of Linesville. After delivering their friends to Linesville, they returned to the City of Andover, and this time first went to the Village Inn, but stayed there only a brief time because there was little activity. They consumed no beverages of any kind at the Village Inn. Then the four went to another tavern in Andover known as Gene's Midway, and van Bockern had two or three beers and Fitch had one or two beers. The four apparently remained at Gene's Midway until approximately 2 o'clock, and upon leaving, van Bockern purchased a six-pack of 3.2 beer. As they were proceeding from Andover back to the girls' residence in Pennsylvania, the six-pack of beer was consumed by Fitch, van Bockern and the two girls.

Van Bockern stated he had one or two and that all four of them drank the six bottles in the pack. There is no evidence as to how many of these bottles of beer Fitch consumed. The last time van Bockern saw Fitch consume any beer was from a bottle in the six-pack in the car 20 minutes before they arrived at the girls' residence. On crossexamination, van Bockern testified that he saw Fitch consume five or six beers during the evening, but admitted that he thought he told the State Police on the night of the accident that Fitch had consumed eight or nine bottles of beer. Van Bockern was crossexamined regarding an alleged statement he made to a Mr. Gerrold (unidentified, but obviously an investigator for defendant's insurance company), in which he was asked if he had not told Mr. Gerrold that Fitch had 12 or 13 beers. This was denied by van Bockern, who said that in mentioning 12 or 13 beers to Mr. Gerrold, he meant the total amount of beer consumed by both him and Fitch.

Van Bockern testified categorically that he was not to any extent or any degree under the influence of intoxicating beverages at the time the accident happened, which he witnessed. Van Bockern also testified categorically that Fitch at no time during the evening or at the time of the happening of the accident was under the influence of intoxicating liquor.

Trooper Alan Phillips, the investigating State Police officer, was then called by plaintiff. He arrived on the scene within 15 or 20 minutes of the happening of the accident, questioned van Bockern in great detail at the scene, had him under observation for a considerable length of time and testified that van Bockern told him that Fitch was not intoxicated "but that he was feeling pretty good". Phillips testified that van Bockern told him Fitch had "about six to nine beers" and that he, van Bockern, had six to nine beers. Phillips also testified that from his observation and his conversation with

van Bockern, that although he detected an odor of alcohol on his breath, he noticed nothing abnormal about van Bockern's conduct; and that in his opinion, van Bockern was not under the influence of intoxicating liquor.

In summary, the evidence of drinking on the part of van Bockern and Fitch, in the light most favorable to the verdict winner, establishes that each consumed nine twelve-ounce bottles of 3.2 beer in a period of three hours and 15 minutes, the last of which was consumed approximately one and a half hours before the accident in question, and that the deceased Fitch was not intoxicated but was "feeling pretty good".

Should this evidence have been heard by the jury? Plaintiff says not; defendant says yes. At the trial, we allowed its introduction, but both at the time of its introduction and again in the charge carefully instructed the jury on its relevancy. We believe our initial ruling to be correct.

While there was no evidence of any adverse effect on Fitch and van Bockern of the consumption of this much beer, we believe that proof of a cause and effect relationship is not needed when alcoholic beverages in this quantity are consumed within the time period in question. While the evidence indicates that neither were "under the influence", as the layman might commonly use the term, reason, logic and the jury's awareness of the effect of alcoholic consumption on the human mind and reflexes dictate that this consumption of a bottle of beer approximately every 22 minutes for a three and one-quarter hour period was a definite factor to be considered in judging the credibility of the witness van Bockern and the possible contributory negligence of the deceased Fitch.

Too often, judges and lawyers tend to look to a rule of admissibility in ruling on and presenting evidence when the best approach is the adoption of a theory of

admissibility of all *relevant* evidence, unless there is a specific exclusionary rule or controlling case law on the point.

Relevancy should be the initial polestar guiding the judge in ruling on admissibility of questioned evidence. Basically, all evidence that is relative should be admitted. Relevancy warrants an assumption of admissibility. Instances of courts overruling or setting aside a jury's verdict because of the wrongful admission of *relevant* evidence should be the rare exception.

We hold that we did not prejudicially abuse our discretion in permitting all relevant evidence to be heard when we allowed the jury to hear evidence of the amount of beer consumed by the two persons in question, particularly in view of our cautionary instructions to the jury as to the proper application of this evidence in their deliberations.

In so holding, we are not unaware of the long line of Pennsylvania cases holding that the mere fact of drinking intoxicating liquor is not admissible, being unfairly prejudicial, unless it reasonably establishes a degree of intoxication which proves unfitness to drive, or, as would be applicable to this case, unfitness to observe and recollect as a reasonable, prudent, sober witness should, or to act as a reasonable prudent, sober pedestrian should. See Critzer v. Donovan, 289 Pa. 381, 137 Atl. 665 (1927) ; Wentworth v. Doliner, 399 Pa. 356, 160 A. 2d 562 (1960) ; Vignoli v. Standard Motor Freight, Inc., 418 Pa. 214, 210 A. 2d 271 (1965) ; Stoner v. Penn-Brixite, Inc., 177 Pa. Superior Ct. 189, 110 A. 2d 904 (1955).

But a close examination of these cases shows the logic thereof, since the evidence of consumption of alcoholic beverages was minimal in quantity, remote in time or consisted of odor only.

For example, in Critzer v. Donovan, supra, proof of intoxication was attempted by producing a witness who

"smelled liquor" on defendant's breath; in Wentworth v. Doliner, supra, intoxication of plaintiff was attempted to be shown "by association, propinquity, and mere breathing"; in Vignali v. Standard Motor Freight, Inc., supra, the court refused to allow proof of intoxication when the testimony would have shown only that defendant consumed "two beers" in Greensburg, Pa., some hours before being involved in a wreck at Carlisle, Pa.; in Stoner v. Penn-Brixite, Inc., supra, the court struck out evidence of intoxication when all that could be shown was defendant drank "two or three glasses of beer" more than a half hour before the accident. Certainly, the exclusion of evidence of minimal drinking of this type is a far different situation than the factual situation before us in the instant case.

Intoxication on the part of a witness at the time of an occurrence about which the witness has testified is a proper matter for consideration of a jury as affecting his credibility: Commonwealth v. Repyneck, 181 Pa. Superior Ct. 630, 124 A. 2d 693 (1956); Commonwealth v. Rouchie, 135 Pa. Superior Ct. 594, 7 A. 2d 102 (1939).

We believe evidence is admissible of consumption of alcoholic beverages to such an extent that reasonable minds cannot differ that although not producing total "intoxication", in the popular sense of the term the quantity of alcohol consumed would likely interfere with the witness' ability to observe, recall and recite important events with the same preciseness as a person unaffected by alcoholic consumption.

In Commonwealth v. Morrison, 157 Pa. Superior Ct. 366, 43 A. 2d 400 (1945), a question was asked of a key witness: ". . . or were you smoking dope cigarettes and drinking stale cider that you found in the cellar that evening"? The trial court sustained an objection to the question. In holding the trial court ruling improper, the Superior Court said:

"The ... question was unobjectionable because it was asked for the purpose of attacking the credibility of the witness by showing that at the time of the event to which he testified his powers of observation and memory were impaired, so that his recollection and account of the experience might be inaccurate; ...."

Likewise, intoxication of a pedestrian would not necessarily prevent recovery, but its importance would lie in strengthening the probability that plaintiff did not use his faculties as a reasonably prudent person would use them under the circumstances: Bright v. Stettenbauer, 339 Pa. 545, 15 A. 2d 676 (1940).[2]

The case of Cook v. Philadelphia Transportation Company, 414 Pa. 154, 199 A. 2d 446 (1964), is a pedestrian injury case in which the issue is not particularly analogous to the one now under consideration, but the Supreme Court, in reviewing some of the aforementioned cases involving admissibility of drinking, says:

"This court has said in language that cannot be mistaken that *unless there is evidence of excessive alcoholic consumption*[3] in a case such as this [car striking pedestrian], it is error to dwell on 'drinking' ".

Conversely stated, then, the court holds that if there is evidence of *excessive* alcoholic drinking, the evidence is admissible. As previously stated, we conclude that nine bottles of 3.2 beer consumed in three and one-quarter hours is such excessive drinking as to warrant submitting this fact to the jury for their consideration.

---

[2] Defendant's brief relies on the case of Dodge v. Clair, 105 N. H. 276, 198 A. 2d 12, (1964). We don't feel this case is analogous to the issue here. In this case, the injured pedestrian admitted to consuming five glasses of ale before the accident, but it was undisputed that he had a blood alcohol content of .19 percent, indicating consumption of over three quarts of beer, and expert testimony to the effect that blood alcohol content in excess of .15 percent indicates, prima facie, an "under the influence" condition.

[3] Italics ours.

A civil trial is basically a search for the truth. "... witnesses ... should be allowed to tell their stories from the witness stand untrammeledly, subject only to the usual limitations concerning hearsay and so on": Cook v. Philadelphia Transportation Co., supra. To send this jury to their deliberation room to decide the rights of these parties without having permitted them to hear evidence of the excessive amount of beer consumed by a key witness and the deceased would have been to direct them to find a verdict without having heard important relevant evidence.

We conclude we properly admitted evidence of drinking on the part of Hollis van Bockern and Samuel G. Fitch, and, accordingly, by following order refuse a new trial.

### ORDER

And now, February 2, 1966, the rule to show cause why a new trial should not be granted is dismissed. An exception is noted for plaintiff.