**406**

Eldon ABEE, Administrator of the Estate of Andrew Bert Weigel, Jr., a/k/a Andrew B. Weigel, Jr., Deceased, Plaintiff,

v.

James STAMM and Milton J. Sokolovich, Defendants.

Civ. A. No. 64–1287.

United States District Court
W. D. Pennsylvania.
Aug. 30, 1967.

John Alan Conte, of Conte & Courtney, Baden, Pa., for plaintiff.

Carl A. Eck, of Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for defendant Stamm.

James E. Coyne, of Weis & Weis, Pittsburgh, Pa., for defendant Sokolovich.

## OPINION AND ORDER

MARSH, District Judge.

The plaintiff administrator brought this diversity action under the Pennsylvania Wrongful Death and Survival Acts against James Stamm and Milton J. Sokolovich. The jury trial resulted in verdicts in favor of the plaintiff and against Sokolovich in the total amount of $70,000 and in favor of Stamm.

The plaintiff timely moved for a new trial against Stamm. He contends that the court erred in permitting counsel for Stamm in cross-examination of Officer Dante Colaluca to elicit matters of defense to the prejudice of the plain-

tiff. He also contends that the court erred in failing to instruct the jury on the proper standard of care applicable to Stamm, who drove his car at night on a through highway in open country past a T-intersection.

In my opinion the motion should be denied.

## I.

From my examination of the testimony of Colaluca, his cross-examination did not exceed the scope of the matter brought out in direct examination.

The tragic accident in which plaintiff's decedent was killed occurred on December 29, 1963, at about 2:50 A.M. The case involved a collision between two motor vehicles,—one driven by Stamm, the other by Sokolovich in which decedent was a passenger. Colaluca was a policeman who arrived at the scene and investigated the accident, interviewed the drivers, described the through concrete highway called Monaca Boulevard and the intersecting T dirt road called Stobo Road or Old Monaca Road. He testified on direct examination to the details of his investigation, including the measurements of the skid marks and the debris on the concrete highway which indicated the place of impact. He described the cars at rest, sketched the scene as it appeared to him after the accident indicating thereon relevant landmarks, and identified and testified to details contained in picture exhibits. The cross-examination was directed to the inferences, deductions, and conclusions which could be drawn from his direct evidence. It also elicited impeaching testimony from Colaluca (T., pp. 31–42).

■ Evidence elicited by way of cross-examination which is germane to matters testified to on direct or tends to elicit what is withheld should not be excluded merely because it tends to introduce matters in defense. Cf. Henry on Evidence, vol. 2, § 817. And as stated in Conley v. Mervis, 324 Pa. 577, 188 A. 350, 354, 108 A.L.R. 160 (1936):

"If cross-examination is to be of any service, it must not be limited to the precise facts brought out in direct examination, but must extend to all inferences, deductions, or conclusions which may be drawn therefrom. * * In other words, the testimony in chief, for the purpose of determining the proper scope of cross-examination, consists not only of the bare facts brought out but in addition includes all inferences or deductions which may be made from them."

In my judgment, the items specifically objected to by plaintiff were properly overruled, but if any ruling be deemed in error, I think such was harmless within the meaning of Rule 61, Fed.R.Civ.P.

■ Although not specified in the motion, plaintiff in his brief specifies as an example of improper cross-examination "the obtaining of a written statement from Defendant Sokolovich; marking it as an exhibit to be introduced into evidence; and not introducing the whole statement but reading only a portion from it TR 76 to 82." A brief explanation is called for.

The statement referred to was taken by Officer Colaluca at the time of his investigation of the accident. The statement, as I recall, included references to Sokolovich and plaintiff's decedent stopping at a tavern after work where they stayed for a time and drank beer prior to the accident. Stamm contended that Sokolovich's drinking caused him to drive negligently, but he had no proof that Sokolovich was intoxicated. In chambers prior to trial (T., p. 79)[1], I ruled that evidence or inference of drinking at this tavern would be prejudicial to Sokolovich, and that such could not be introduced under Pennsylvania law.[2] See: Vignoli v. Standard Motor Freight, Inc., 418 Pa. 214, 210 A.2d 271 (1965); Cook v. Philadelphia Transportation Company, 414 Pa. 154, 199 A.2d 446

---

1. This issue was raised at pretrial conference (Tr. of pretrial conference April 7, 1966, pp. 8–11).

2. The discussion and rulings at trial on this issue were not transcribed.

(1964); Harvey v. Doliner, 399 Pa. 356, 160 A.2d 562 (1960); Fisher v. Dye, 386 Pa. 141, 125 A.2d, 472 (1956); Critzer v. Donovan, 289 Pa. 381, 137 A. 665 (1927). Hence, at trial the objectionable portion of the statement was excluded, and the entire statement (marked Stamm's Exhibit 18 for identification) was not admitted in evidence.

Plaintiff's only objection to the portion read to the jury was that it was a matter of defense and improper cross-examination (T., p. 78). Plaintiff did not object on the ground that the whole statement was not admitted; neither did he request that the entire statement be admitted and read to the jury. Indeed, at trial counsel for the plaintiff seemed to be in accord with the court's exclusionary ruling. See his objection on page 83 of the transcript, which objection was sustained. I think the portion of the statement of Sokolovich read into evidence was admissible, and that there was no error in refusing to admit the prejudicial part thereof.

## II.

The plaintiff complains that the court erred in not instructing the jury as stated in plaintiff's fourth, fifth, sixth and eighth Requests for Instructions. He cites: Schreckengost v. Kraft, 415 Pa. 567, 204 A.2d 646, 649 (1964); Deibold v. Sommerville, 207 Pa.Super. 31, 215 A.2d 313 (1965); Fidelity-Philadelphia Trust Co. v. Staats, 358 Pa. 344, 57 A.2d 830 (1948); Wermeling v. Shattuck, 366 Pa. 23, 76 A.2d 406 (1950).[3] The first three cases involved accidents at city intersections; the first two involved injuries to urban pedestrians; the third a collision between vehicles traversing each intersecting street.

In the instant case, the intersection was merely a circumstance. The place of the accident was in open country. Monaca Boulevard, a 3-lane highway, is intersected from the west by Stobo Road, a dirt road. The intersection is a T-intersection and not a transverse crossing of Monaca Boulevard. Sokolovich was proceeding north and Stamm was proceeding south on Monaca Boulevard which was straight and practically level for some distance north and south of the intersection. It was nearly 3:00 o'clock in the morning. The weather was clear and the road dry. There were no other vehicles in the vicinity. No vehicle was approaching the Boulevard on intersecting Stobo Road. The intersection was illuminated.

Plaintiff claimed Stamm was approaching the intersection at an excessive rate of speed, basing this inference on Sokolovich's testimony, lengthy skid marks and severe damage to the cars. He claimed the collision occurred on the western side of the Boulevard at the intersection with Stobo Road in Stamm's lane of travel as Sokolovich turned left in front of the rapidly approaching Stamm vehicle to enter Stobo Road. Sokolovich admitted that he turned his left-turn signal on only 20 feet from the point where he began to turn left. Section 1012 of the Motor Vehicle Code requires the turn signal to be turned on 100 feet in advance of the turning movement.

Stamm claimed that the turn signal was not turned on; that his speed was a lawful 45 to 50 miles per hour as he approached the open intersection; that Sokolovich without warning suddenly turned west into Stamm's lane, not at the intersection, but 35 feet south thereof, causing the collision 35 feet distant from the intersection; that he applied his brakes hard as he was passing the Stobo Road intersection but could not stop or avoid the collision; that Sokolovich would have collided with the hillside west of the Boulevard had the collision not occurred.

The jury believed Stamm's version. I cannot say that the verdict in favor

---

3. The accident in Wermeling occurred in open country six miles west of the City of Erie. As I read that opinion, it does not prescribe the high standard of care which plaintiff's counsel argues should have been applied in the case under consideration.

of Stamm was against the weight of the evidence.

■■ In the foregoing circumstances, the charge instructed that both drivers were required to exercise reasonable and ordinary care in the circumstances. I instructed the jury in accord with plaintiff's second, third and seventh requests to the effect that Stamm, as he approached the intersection, was required to have his car under such control as to be prepared for traffic or conditions which he reasonably could expect in the circumstances; that he was negligent if the jury found that he was exceeding the speed limit of 50 miles per hour; that he was required to exercise reasonable care for the safety of others using the Boulevard. Of course, reasonable care is commensurate with the risk involved. Actually under Stamm's testimony there were no circumstances which would put a reasonable driver on notice of impending danger as he approached the intersection. He had the right to assume that Sokolovich approaching from the opposite direction on the Boulevard would not without adequate warning suddenly turn across the Boulevard in front of him. He was not required to speculate what Sokolovich might do when admittedly there was no notice, or insufficient notice, that he would negligently attempt to cross Stamm's clear path. Absent any circumstances which would put Stamm on notice that Sokolovich would suddenly and unlawfully turn across his path 35 feet south of the intersection, or even at the intersection, Stamm had a right to proceed on the Boulevard without abating the speed of his vehicle, assuming, of course, that his speed was 45 to 50 miles per hour as his evidence established apparently to the jury's satisfaction.

I do not think that the plaintiff was entitled to a charge imposing on Stamm the highest or a higher standard of care than reasonable and ordinary care in the circumstances. Moreover, plaintiff did not except to the charge as required by Rule 51, Fed.R.Civ.P.

I share the understandable frustration of the decedent's family, and their counsel, that Sokolovich cannot fully pay the amount of the judgments against him.

An appropriate order will be entered.

