537 A.2d 969

Robert F. Carroll, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs October 1, 1987, to Judges MACPHAIL and BARRY, and Senior Judge NARICK, sitting as a panel of three.

*Richard J. Friedman,* for petitioner.

*Sandra L. Clouser,* Assistant Counsel, with her, *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

Opinion by Judge Barry, February 22, 1988:

Robert F. Carroll, the claimant, appeals an order of the Unemployment Compensation Board of Review (Board) which affirmed a decision of a referee denying claimant benefits because he voluntarily quit his job without cause of a necessitous and compelling nature. Section 402(b) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b) (Sup. 1987).

Claimant was hired by All Natural (employer) in November of 1985. At the time of his hire, he was earning $3.50 an hour. According to the claimant's testimony, he was told at the time of his hire that an automatic raise would be forthcoming after he had worked for six months. After working six months, claimant began inquiring about the promised pay increase. He was eventually told that he would be given a raise only if he would take and pass a polygraph examination. Rather than take the examination, claimant quit his job.

Claimant applied for benefits. The Office of Employment Security denied the application based on Section 402(b). The claimant then appealed and a hearing, at which the employer failed to appear, was held before a referee. After the claimant testified that he had been promised an automatic raise after working six months and had quit when he was informed that no raise would be forthcoming until he had successfully passed the polygraph examination, the referee denied benefits. Claimant appealed to the Board, which also denied benefits. The Board's denial was based on the following findings of fact:

2. The claimant *had requested* a raise in salary and a promotion and was advised by the employer that such would not be discussed until claimant took a polygraph test.

3. The taking of the polygraph test was not made a condition of claimant's continuing employment.

4. The claimant was not advised that he would be discharged if he did not submit himself to a polygraph test.

6. On May 13, 1986, the claimant voluntarily terminated his employment because he did not want to take a polygraph test and because he was dissatisfied with his failure to secure a raise in salary or a promotion.

(Decision and Order of the Board, October 15, 1986) (emphasis added).

Our scope of review is limited to determining whether one's constitutional rights have been violated, whether an error of law has been committed or whether all necessary factual findings are supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986). The Board is the ultimate fact-finder in these matters. *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985).

The claimant argues that he had cause of a necessitous and compelling nature which permitted him to quit his job and still remain eligible for benefits. Claimant essentially argues that having been promised a raise after working six months, the conditioning of that raise on passing a polygraph exam constitutes a substantial unilateral change in the terms and conditions of employment giving him good cause to resign. *National Aluminum Corp. v. Unemployment Compensation Board of Review,* 59 Pa. Commonwealth Ct. 359, 429 A.2d 1259 (1981). He also argues that requiring the polygraph violates the public policy of this Commonwealth, again giving him justification to quit his job but still remain

eligible for benefits. *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3d Cir. 1979).

Before proceeding further, we must point out that the Legislature has severely circumscribed the use of polygraph examinations by employers. The Crimes Code provides:

(a) **Offense defined.**—A person is guilty of a misdemeanor of the second degree if he requires as a condition of employment or continuation of employment that an employee or other individual shall take a polygraph test or any form of a mechanical or electrical lie detector test.

(b) **Exception.**—The provisions of subsection (a) of this section shall not apply to employees or other individuals in the field of public law enforcement or who dispense or have access to narcotics or dangerous drugs.

18 Pa. C. S. §7321.

In *Perks*, the Court held that Section 7321 of the Crimes Code embodied public policy of this Commonwealth so that an at-will employee who is fired for refusing to submit to such a test had a cause of action for wrongful discharge because a firing for this reason violated public policy. *See Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974) (recognizing that an at-will employee may have a cause of action against his former employer if the firing violated public policy). In *Polsky v. Radio Shack*, 666 F.2d 824 (3rd Cir. 1981), the employer forced the employees to sign a release which absolved the employer from any liability resulting from the polygraph testing. When Polsky was fired after failing a polygraph, she filed a wrongful discharge action. While the district court granted summary judgment in favor of the employer because Polsky failed to show she signed the release under duress, the Court of Appeals reversed, stating:

> We believe that the Pennsylvania legislature did not intend to allow employers to circumvent section 7321 by requiring indirectly what they cannot require directly. Consequently, we hold that a release from liability for violation of section 7321(a) is not valid if signing of that release was required as a condition of employment or continued employment.

666 F.2d at 829.

Even before the enactment of Section 7321, the courts of Pennsylvania have been unwilling to sanction the use of polygraph tests. As the Superior Court has stated, "The reliability and scientific infallibility of the polygraph . . . must be more definitely established before our courts will accept their results as credible." *Commonwealth ex rel. Riccio v. Dilworth,* 179 Pa. Superior Ct. 64, 67-68, 115 A.2d 865, 867 (1955). The Supreme Court has also stated, "We note further that the scientific accuracy or infallibility of the lie detector has not been recognized by our Court." *DeVito v. Civil Service Commission,* 404 Pa. 354, 360, 172 A.2d 161, 164 (1961). Finally, the prohibition concerning references to polygraph tests has been applied evenhandedly so that one's willingness to take such a test cannot be admitted as evidence, *Commonwealth v. Saunders,* 386 Pa. 149, 125 A.2d 442 (1956), nor can the Commonwealth bolster the credibility of a witness by reference to such testing. *Commonwealth v. Johnson,* 441 Pa. 237, 272 A.2d 467 (1971).

The Board argues that the claimant did not have cause of a necessitous and compelling nature to quit his job because he was not told continued employment would be jeopardized by his refusal to take the test. The Board did find that the employer refused to discuss either a raise or a promotion until successful completion of the test. We believe this distinction offers the em-

ployer no more solace than the release signed in *Polsky.* Any employee who works satisfactorily for any period of time can reasonably expect a raise, a promotion or both. Conditioning either on the passing of a polygraph has the very real effect of conditioning the continuation of employment in violation of Section 7321. Under these circumstances, we believe claimant had cause of a necessitous and compelling nature justifying his voluntary quit.

Reversed.

#### ORDER

NOW, February 22, 1988, the order of the Unemployment Compensation Board of Review, dated October 15, 1986, at No. B-253535 is reversed.

Judge MACPHAIL dissents.