Commonwealth *v.* Johnson, Appellant.

Argued November 19, 1970. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien and Pomeroy, JJ.

238

*Don M. Larrabee, II,* for appellant.

*Allen E. Ertel,* District Attorney, submitted a brief for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 7, 1971:

Appellant was found guilty by a jury of burglary and larceny and subsequent to denial of his new trial motions he was sentenced to five years' probation. An appeal to the Superior Court resulted in an affirmance of the judgment of sentence by an equally divided court with Judge SPAULDING filing a dissenting opinion in which Judges MONTGOMERY and HOFFMAN joined. *Commonwealth v. Johnson,* 216 Pa. Superior Ct. 245, 263 A. 2d 784 (1970). We granted allocatur.

The question at issue relates to references being made to a lie detector test. At trial, one Robert Miles,

who had pleaded guilty to the crimes charged and was awaiting sentence at the time of appellant's trial, testified as a witness for the Commonwealth. He testified that he and appellant had committed the burglary together. Three of Miles' fellow prisoners testified for the defense to the effect that when Miles had first discussed the case with them, he had said that he committed the burglary alone. They further testified that about a week later, after Miles had spent considerable time with the police, his story changed to include the appellant. They further testified that Miles talked about "getting back" at appellant and that Miles appeared to be receiving special treatment from the police.

In rebuttal, the Commonwealth, in attempting to rehabilitate Miles, was permitted to refer to a lie detector test. The testimony was as follows: "Q. Now sir, you heard several witnesses who were also prisoners in Clinton County Prison when you were there testify yesterday that while you were there, you stated you committed these burglaries by yourself? A. Yes sir, I made them. Q. Did you ever make those statements? A. Yes, I made the statements up until I was taken to the Lock Haven Police Department. . . . Q. Now somewhere along the line you changed your story, is that correct? A. Yes, sir. Q. You had indicated as you said before that Johnson was with you? A. Yes, sir. Q. Where were you when you first changed your story? A. I was at the Mayor's Office in Lock Haven sitting with the police in the municipal building in Lock Haven. Q. And what was the occasion for your being there in his office? A. I was given a lie detector test. Q. You were given a lie detector test? A. Yes sir, I was. Q. After you were given the lie detector test, did you change your story? A. Yes, sir. They gave me three of them."

We are in agreement with the position of the dissenting judges in the Superior Court that "references to the lie detector test should not have been permitted, because it unavoidably raised an inadmissible inference of the test result. See Com. ex rel. Hunter v. Banmiller, 194 Pa. Superior Ct. 448, 450-51, 169 A. 2d 347, 348 (1961)." (Page 247.)

The Superior Court dissenters further aptly stated that: "The reference here went much further than showing state of mind as to guilt or innocence in relation to a hypothetical test; it raised the inference that an actual test certified the truth of testimony implicating the accused. The inference carried the weight of scientific evidence while in fact that evidence was unreliable. The same considerations that require excluding express discussion of the test result require excluding the instant reference."

In *DeVito v. Civil Service Commission,* 404 Pa. 354, 360, 172 A. 2d 161, 164 (1961), we said: "We note further that the scientific accuracy or infallibility of the lie detector has not been recognized by our Court. The use of such a test is judicially unacceptable both in this Commonwealth and by the general current of decisions throughout the United States. . . ." It is true that in *DeVito,* as well as the other Pennsylvania cases involving this matter, the question concerned either the accuracy of lie detector evidence or the willingness or refusal of an accused to submit to such a test. In all such instances we have held consistently that the evidence is inadmissible. The reasons which dictated those conclusions also dictate the inadmissibility of the reference to the fact of the taking of a lie detector test in the instant case.*

---

\* See *Com. v. Saunders,* 386 Pa. 149, 157 (1956), where we said: ". . . it is obvious that neither a professed willingness nor a refusal to submit to such a test should be admitted. Defend-

The Commonwealth argues that the attack upon Miles' credibility embodied in the introduction of evidence that police favors encouraged Miles to implicate Johnson created a serious situation for the Commonwealth. We have no doubt that the testimony of Miles' jailmates created a serious situation for the Commonwealth. In its brief the Commonwealth says: "To allow the defense to fabricate a story that the witness had been improperly induced by the police to implicate the defendant without permitting the state to rebut this defense would seriously hamper the prosecution. The state should be allowed to show in rebuttal that, in fact, Miles changed his story after undergoing a polygraph examination, especially since the results were not put into evidence. This is the only way that the manner in which Johnson attacked on [sic] Miles' credibility could be rebutted."

Whether the defense fabricated the story is, of course, a question which the jury must decide in passing on the credibility of the witnesses. There is no doubt that the Commonwealth should be permitted in rebuttal to rehabilitate a witness whose credibility has been put in question by the defense. That rehabilitation, however, could have been accomplished in some other manner. Miles could have testified that his change in story was motivated by a desire to tell the truth or in any of a number of other ways. The police officials involved could have denied any special favors or inducements aimed at causing Miles to change his testimony. In short, the Commonwealth is not permitted to violate the rules of evidence in order to rehabilitate a witness.

---

ant's offer was merely a self-serving act or declaration which obviously could be made without any possible risk, since, if the offer was accepted and the test given, the result, whether favorable or unfavorable to the accused, could not be given in evidence."

While it is the law that prior consonant statements may be admitted for rehabilitation purposes, the use of such prior consonant statements does not permit the violation of any other exclusionary rule of evidence. As the Superior Court dissenters point out: ". . . [T]he statements may be offered to rehabilitate the witness's credibility, but 'not as evidence of the facts stated by the witness.' . . . The effect of the reference to the lie detector test in this case cannot be limited to dispelling the inference of impure motives. It incurably bolsters the witness's testimony, as evidence of the facts he stated."

Since we agree that the witness's testimony was incurably bolstered by the reference to the lie detector test, we agree with the Superior Court dissenters that the charge of the trial court instructing the jury to limit its considerations strictly to the fact that the test had been administered could not remove the prejudice.

The order of the Superior Court is reversed, the judgment of sentence is reversed, and the case is remanded to the Court of Common Pleas of Lycoming County for a new trial.

Mr. Chief Justice BELL dissents.

Mr. Justice COHEN took no part in the decision of this case.

Mr. Justice ROBERTS took no part in the consideration or decision of this case.