558 A.2d 174

Ronald Leonard, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Police, Respondent.

Argued November 3, 1988, before Judges BARRY, COLINS, and MCGINLEY, sitting as a panel of three.

*Gary M. Lightman,* for petitioner.

*Joanna N. Reynolds,* Assistant Counsel, for respondent.

OPINION BY JUDGE BARRY, May 9, 1989:

Petitioner, Ronald Leonard, was a trooper with the Pennsylvania State Police. In April of 1988 a Court-martial Board (Board) recommended that petitioner be dismissed for violating police regulations. The dismissal was made final by an order of the Deputy Commissioner of the state police.[1] This appeal followed.

---

[1] The Commissioner of the state police delegated his authority to render a final decision to the Deputy Commissioner because of the Commissioner's prior involvement in the investigation of the charges brought against petitioner. (Delegation of Authority, dated April 7, 1988, by Commissioner Ronald M. Sharpe.)

The dismissal was based on the following incident. Petitioner attended a small party in November of 1985 at the residence of Daniel Lemak. Cocaine was used during the party. One of the other persons present at the party, Penelope Hebert, subsequently informed the state police that petitioner had consumed cocaine at this party. The state police conducted an internal investigation and the Court-martial Board was convened. The Board determined that sufficient evidence was introduced to establish that petitioner was at a party where illegal acts were taking place, that he was aware of these acts and that he took no enforcement action with respect to these acts. The Board concluded that petitioner was guilty of conduct unbecoming an officer and failure in the performance of his duties. The Board also found that petitioner did not personally use cocaine at the party. The Deputy Commissioner adopted the essence of the Board's findings and ultimate conclusions of law.

The evidence against petitioner consists primarily of the testimony of Penelope Hebert. According to Hebert, the cocaine was in plain view of Leonard during the party. Petitioner makes three arguments as to why Hebert's testimony was improper. First, petitioner argues that his right to cross-examine the witness was denied because the Board did not compel Hebert to respond to questions concerning her place of employment. While the state police attorney was obtaining basic information about the witness during direct examination, Hebert refused to answer a question as to where she worked. Petitioner's attorney then asked Hebert again, during cross-examination, where she worked and she again refused to answer. The witness expressed concern about being harassed at her work place by her former fiance, Daniel Lemak, the host at the party, who, she testified, was a friend of petitioner. The Board declined to compel the witness to answer the question because of this testimony and be-

cause the Board found the question to be irrelevant. Petitioner's attorney argued that the question might lead to information that Hebert's employer had a personal motivation in seeing petitioner dismissed from the state police.

Petitioner's second argument is that, again, his right to cross-examine a witness was denied because the Board refused to compel Hebert to testify about the name of a doctor she had consulted. During cross-examination, Hebert was asked questions concerning what occurred during this consultation, which she answered. But when she was asked to give the name of the doctor, she refused. Her reason for not giving the name was her belief that someone had forged a letter with the name of another doctor she had been seeing and sent the letter to the Department of Transportation which caused her driver's license to be suspended. Hebert testified that she feared a similar occurrence with the second doctor's name and refused to answer the question, even when the Board requested that she answer.

In disposing of these two arguments, we look to Section 711(b)(2) of The Administrative Code of 1929[2], which states:

> The Court-martial Board shall have power to issue subpoenas requiring the attendance of witnesses at any hearing and shall do so at the request of the party against whom a complaint is made. If any person shall refuse to appear and testify in answer to any subpoena issued by the board, any party interested may petition the court of common pleas of the county wherein the hearing is to be held setting forth the facts. The court shall thereupon issue its subpoena commanding such person

---

[2] Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §251(b)(2).

to appear before the Court-martial Board, there to testify as to the matters being inquired into. Any person refusing to testify before the Court-martial Board may be held for contempt by the court of common pleas.

The statute does not give power to a Court-martial Board to compel someone to testify. The Board has no authority to hold someone in contempt. Instead the statute states that "any party interested" may petition the court of common pleas in the county where the hearing is held to compel a witness to testify and the court may use its contempt powers to do so. It was petitioner's responsibility to petition the common pleas court to compel Hebert to answer questions which she refused to answer.

We note that the language quoted from the statute, when read in its entirety, could be interpreted as controlling only the issuance of subpoenas to appear before the Board. We hold that this language also requires an interested party to petition the Common Pleas court when a party who has appeared refuses to testify. Otherwise the interested party would have no recourse to compel the witness to testify since the Board is not only not required to seek a contempt order under the statute, but is not *authorized* to seek a contempt order. (Compare *Miller v. Unemployment Compensation Board of Review,* 99 Pa. Commonwealth Ct. 137, 512 A.2d 797 (1986), in which this Court held that it was error for the Unemployment Compensation Board of Review not to take steps to enforce its subpoena for relevant employer records where the statute governing the board authorizes the board or its agent, and not an interested party, to petition the common pleas court to direct the production of subpoenaed records.)

One further consideration is to determine exactly when a party may petition the Common Pleas court. If

the party attempts to halt the proceedings and pursue a contempt order as soon as a witness refuses to answer a question, the Board would be denied the opportunity to rule on the relevance of the question. The interested party therefore can only pursue a contempt order when the Board has directed the witness to answer the question and the witness has continued to refuse. If the interested party asks the Board to direct the witness to answer and the Board will not do so, then we may review the Board's decision to determine if the Board has abused its discretion.

We will now examine the situation surrounding Hebert's refusal to answer the question concerning her place of employment. Hebert refused to divulge where she worked when asked both on direct and cross-examination. On both occasions petitioner's attorney objected to her refusal but the Board did not direct Hebert to answer the question because the Board did not consider the inquiry to be relevant to the proceeding. Petitioner's attorney indicated in his objection that Hebert's place of employment might be relevant if her employer had a personal interest in seeing petitioner's career suffer and he argued that he should be given an opportunity to explore this possibility.

We are persuaded by this argument and hold that the Board abused its discretion by ruling that this question was not relevant and by not directing Hebert to answer it. Because the Board did not direct Hebert to answer this question, petitioner could not pursue a contempt order in Common Pleas court. We will therefore reverse the Board's ruling that the question was not relevant and remand so that the Board may direct the witness to answer the question. If the witness continues her refusal to answer, petitioner may pursue contempt proceedings in Common Pleas court.

The circumstances surrounding the question concerning the physician differ from the place of employment question. While the Board expressed doubts about the importance of the question, it did eventually direct Hebert to give the name of the physician. When she continued to refuse to answer, it was then petitioner's responsibility to pursue a contempt order in Common Pleas court. Because he did not do so at the time, petitioner has waived this option and may not petition the Common Pleas court regarding this question when the case is remanded. *Miller v. Unemployment Compensation Board of Review,* 196 Pa. Superior Ct. 393, 175 A.2d 119 (1961).

Petitioner's third argument concerning Hebert's testimony is that her statement during cross-examination that she took a polygraph test irreparably tainted the proceedings. The following exchange took place between Hebert and petitioner's counsel while counsel was asking questions concerning Hebert's interview with a state police officer:

Q. And what did you tell him?

A. I told him about the incident.

Q. And you still didn't describe the incident as you did today; did you?

A. Yes, I did.

Q. You described it exactly the same way?

A. Yes, and I had to go take a lie detector.

(R. 97a) At this point petitioner's counsel claimed that a fatal error had been made and a discussion of the issue ensued. This was the only reference to a polygraph test made by Hebert.

Petitioner cites three cases in support of his argument. *Commonwealth v. Gee,* 467 Pa. 123, 354 A.2d 875 (1976); *Ross v. Civil Service Commission,* 98 Pa. Commonwealth Ct. 565, 511 A.2d 941 (1986); and *Township of Silver Spring v. Thompson,* 90 Pa. Commonwealth Ct.

456, 496 A.2d 72 (1985). All of these cases hold that *results* of a polygraph test are inadmissible in Pennsylvania. Here, however, Hebert did not mention the results of the test, only the fact that a test had been given. This Court has previously held that a police officer was not prejudiced by the repeated references to a polygraph test during the hearing which resulted in his dismissal. *Appeal of McMullin*, 41 Pa. Commonwealth Ct. 474, 401 A.2d 572 (1979). Also, the Pennsylvania Supreme Court has declined to overturn convictions in criminal cases where the giving of a polygraph test had been mentioned during testimony but the results had not been given. *Commonwealth v. Brinkley*, 505 Pa. 442, 480 A.2d 980 (1984); *Commonwealth v. Miller*, 497 Pa. 257, 439 A.2d 1167 (1982). In light of these cases we hold that mere reference to the polygraph test did not irreparably taint the proceedings.

Petitioner next argues that it was error for the Board to accept the testimony of Hebert that petitioner saw cocaine at the party, but reject her testimony that he was using cocaine. The Board, as fact finder, is free to accept or reject the testimony of any witness, in whole or in part. *Spehar v. Commonwealth, Department of Public Welfare*, 67 Pa. Commonwealth Ct. 310, 447 A.2d 333 (1982); *In the Matter of Real Estate License No. R. B.-001518-A*, 47 Pa. Commonwealth Ct. 236, 407 A.2d 922 (1979).[3]

Petitioner's last argument concerns the state police denial of access to information obtained in their investigation of this matter. Petitioner appears to be arguing that it was a denial of due process for the state police to refuse

---

[3] Petitioner also argues that the finding that cocaine was in plain view of petitioner is not supported by substantial evidence. This argument is based on petitioner's argument that this Court should strike Hebert's testimony because of a violation of the right to cross-examination. Since we see no basis for striking her testimony, we need not address this argument.

to allow him to interview the officer conducting the state police investigation or obtain information from him concerning his investigation. This Court has previously held that there is no statutory or constitutional directive requiring the disclosure of investigative reports in court-martial proceedings. *Stouffer v. Commonwealth, Pennsylvania State Police,* 76 Pa. Commonwealth Ct. 397, 464 A.2d 595 (1983).

In summary, we reverse with respect to the Board's ruling on the relevance of the question concerning Hebert's place of employment, vacate the order of the Pennsylvania State Police Deputy Commissioner and remand solely so that the Board may direct Hebert to answer this question and permit petitioner to pursue contempt proceedings if Hebert refuses.

ORDER

NOW, May 9, 1989, the order of the Pennsylvania State Police Deputy Commissioner, dated April 14, 1988, is vacated and the matter remanded for proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.