598 A.2d 1310

**Robert E. WILSON, Appellant,**

v.

**DONEGAL MUTUAL INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued May 16, 1991.

Filed Nov. 13, 1991.

32

Joseph J. Hinchliffe, Pittsburgh, for appellant.
Dara A. DeCourcy, Pittsburgh, for appellee.

Before CAVANAUGH, DEL SOLE and CERCONE, JJ.

CERCONE, Judge:

This appeal is from a civil judgment entered in the Court of Common Pleas of Allegheny County. We affirm.

On February 3, 1987, a residential building owned by appellant, Robert E. Wilson, was seriously damaged by fire. The property had been insured against fire loss by appellee. On March 26, 1987, appellant submitted a claim for fire loss to appellee, who then commenced an investigation. As part of that investigation, appellant's deposition was scheduled. Immediately after the deposition, on June 5, 1987, appellant was arrested on charges of arson. Appellant was tried for arson in the criminal division of the lower court and was acquitted. On September 25, 1989, appellee denied coverage to appellant for the fire loss on the grounds of arson.

Appellant then commenced a civil action against appellee by writ of summons. On May 6, 1988, when the complaint was filed, it contained three counts: Count I, breach of contract; Count II, trespass/fraud and deceit; and Count III, violations of the Consumer Protection Act. Appellant was given permission to amend the complaint in October, 1989. The amended complaint contained four additional counts: Count IV, deprivation of civil rights; Count V, false arrest; Count VI, false imprisonment; and Count VII, infliction of emotional distress.

A jury trial was held on May 23, 1990 in the lower court. After a motion *in limine* by appellee, the lower court dismissed counts III, IV, V, VI, and VII of the complaint. Before the jury retired for deliberations, the court entered a non-suit as to count II. The jury deliberated on count I and returned a verdict in favor of defendant appellee. Appellant's post-trial motions were denied, and he then filed the instant timely appeal.

On appeal, appellant raises the following issues:

I. Whether the trial court erred when it denied a mistrial when defense counsel improperly questioned the plaintiff as to whether he had refused a polygraph examination;

II.   Whether the trial court erred when it granted a non-suit as to plaintiff's action for fraud and deceit against the defendant insurance company.

On the basis of these and other issues, appellant requested post-trial relief in the form of a new trial in the lower court. "Our standard of review of the denial of a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or an abuse of discretion." *Robertson v. Atlantic Richfield Petroleum Products Company*, 371 Pa.Super. 49, 61, 537 A.2d 814, 820 (1988), *allocatur denied* 520 Pa. 590, 551 A.2d 216 (1988).

The appellant bears a heavy burden in persuading this court that such error occurred. In considering all of the evidence in the light most favorable to appellee we must, to reverse the trial court, conclude that the verdict would be changed if another trial were granted.

*Id.* When the basis of the request for a new trial is the lower court's ruling(s) on evidence, to constitute reversible error, such ruling "must be shown not only to have been erroneous but harmful to the party complaining...." *Hart v. W.H. Stewart, Inc.*, 523 Pa. 13, 16, 564 A.2d 1250, 1252 (1989) (citations omitted). "An evidentiary ruling which did not affect the verdict will not provide a basis for disturbing the jury's judgment." *Id.*

Appellant contends that the lower court erred in failing to grant him a new trial on the basis of testimony elicited from him on cross-examination concerning whether he had refused to take a polygraph examination in connection with the instant litigation. Specifically, the testimony objected to was:

Q.   When I asked you to take a polygraph in this case you refused, didn't you?
A.   My attorney advised me to not take any sort of a polygraph test because they are not admissible and inaccurate.

At the trial, counsel for appellee indicated that he elicited this testimony from appellant for the purpose of impeachment. (N.T., May 24, 1990, at 112). A review of the record

reveals that the impeachment related to a question which appellee's counsel had previously asked appellant, as to whether he [appellant] had called the fire department the day after the fire at issue in the present case. Appellant replied that he had indeed called the department about the fire. (N.T., May 24, 1990, at 104). Subsequently, counsel for appellee began his impeachment of this statement by reading and having appellant read excerpts of his testimony from a previous proceeding, a deposition of appellant which took place on June 5, 1987. In that deposition, when asked whether he had called the fire department to find out any of the particulars about the fire, appellant replied that he had not.

The testimony at the deposition then addressed the reasons for appellant's failure to call the fire department. These included the fact that there had been a prior legal action involving appellant and the Borough of Swissvale, which had caused some "bad relations" with the borough of Swissvale "in general." In that legal action, appellant had requested that the court order the borough officials to take a polygraph test concerning certain of the circumstances involved in that case, which request the lower court refused. The testimony at trial then proceeded to the objected-to question, which appellant cites as the basis for a new trial. That question was immediately followed by testimony that appellant had been advised by his attorney prior to his June, 1987 deposition that he should refuse any request that he submit to a polygraph.

In ruling on appellant's objection to the quoted question, the lower court held that it was admissible for the limited purpose of impeachment relative to the prior statement which appellant had made on the stand during trial, *i.e.,* that he had contacted the fire department about the fire at issue the day after the fire's occurrence. The question then is whether appellant's testimony that he had refused appellee's counsel's request that he submit to a polygraph in regard to the instant proceeding was admissible for the

purpose of impeaching appellant's statement that he had contacted the fire department the day after the fire.

Rulings on evidence are within the discretion of the trial judge and will not be reversed on appeal absent a manifest abuse of that discretion. *Capan v. Divine Providence Hospital*, 270 Pa.Super. 127, 410 A.2d 1282 (1979); *Westerman v. Stout*, 232 Pa.Super. 195, 335 A.2d 741 (1975); *Kubit v. Russ*, 287 Pa.Super. 28, 429 A.2d 703 (1981). With regard to polygraph evidence, it has been held that since the test is not judicially acceptable, testimony of a witness' willingness or refusal to submit to such examination is not properly admitted. *Commonwealth v. Saunders*, 386 Pa. 149, 125 A.2d 442 (1956). It has also been held, however, that a witness' reference to the polygraph test of a defendant in a criminal trial is not the basis for a new trial where the reference was an unresponsive answer to a narrowly framed question by the prosecutor, did not suggest the result of the test, and where the trial court issued immediate and extensive instructions regarding the unreliability and inadmissibility of polygraph tests. *Commonwealth v. Brinkley*, 505 Pa. 442, 452–53, 480 A.2d 980, 986 (1984). The Commonwealth Court has also held that mere references to polygraphs in non-criminal, quasi-judicial proceedings did not sufficiently taint those proceedings so as to constitute reversible error. *Leonard v. Pennsylvania State Police*, 125 Pa.Commw. 641, 558 A.2d 174 (1989); *Appeal of McMullin*, 41 Pa.Commw. 474, 401 A.2d 572 (1979). Crucial to the court's holdings in these cases was the fact that no reference was made to the results of the polygraph examinations in the lower tribunals. *Leonard v. Pennsylvania State Police*, 125 Pa.Commw. at 648, 558 A.2d at 177; *Appeal of McMullin*, 41 Pa.Commw. at 477–78, 401 A.2d at 574.

Applying these principles to the facts of the instant case, we note first that the strict prohibition on reference to polygraph examinations, as set forth in *Commonwealth v. Saunders, supra,* has been eroded by the more recent cited cases. *See Commonwealth v. Brinkley,*

*supra; Leonard v. Pennsylvania State Police, supra; Appeal of McMullin, supra.* These latter decisions have adopted a less stringent standard for the admission of testimony concerning polygraphs, with the decisive factor being whether the testimony contained any reference to polygraph test results. Using these pronouncements as our standard, we would not find the polygraph testimony in the instant case inadmissible solely because it referred to a polygraph examination since there was no reference here to test results. However, the issue of the effect on the factfinder of testimony concerning polygraph tests has been addressed again quite recently by the Pennsylvania Supreme Court in *Quigley v. Philadelphia Civil Service Commission,* 528 Pa. 195, 596 A.2d 144 (1991). Since *Quigley* represents the most recent decision of our supreme court on the issue of the admissibility of evidence of this nature, we will examine that case in detail.

In *Quigley,* the Pennsylvania Supreme Court held that the numerous references to a polygraph examination taken by a witness at a hearing on dismissal charges against appellant, a police officer, were prejudicial as those references raised an impermissible inference of the test results. 528 Pa. at 203–204, 596 A.2d at 148–149. In *Quigley,* appellant was dismissed from the Philadelphia Police Department on charges of having prearranged a false arrest and seizing false evidence, thereby perverting and obstructing the administration of law. At a hearing on the charges, Richard Edgerton, a witness to the alleged misconduct of appellant, testified against him. Appellant gave a different version of the events than did Edgerton, and a third witness, police officer Losco, testified in ways consistent with both Edgerton and appellant. During the hearing, various references were made to the fact that Edgerton had taken a polygraph examination in regard to his version of the relevant events. Appellant made objections to the polygraph references as they occurred. The Civil Service Commission denied appellant's appeal of his dismissal, explicitly noting

that it found Edgerton's testimony credible and that Edgerton had "passed a lie detector test."

On appeal to the Commonwealth Court, that court rejected appellant's argument that the numerous references at the hearing to Edgerton's polygraph constituted reversible error. The Commonwealth Court reasoned that the references were not error because they did not discuss the results of the polygraph. On appeal, the Pennsylvania Supreme Court reversed. Justice Zappala, writing for the court, found that despite the fact that the test results were not explicitly disclosed, the numerous polygraph references had caused the Commission to infer that Edgerton had passed the test. He concluded that the references were prejudicial in that they unavoidably raised an impermissible inference of the test results.

We find the instant case distinguishable from *Quigley*. Unlike the witness in *Quigley*, appellant Wilson never submitted to a polygraph examination. Thus, the inference which our Supreme Court found so offensive in *Quigley*, that the witness had passed the examination, could not possibly have been drawn here. Since Wilson had not submitted to a test, together with his explanation that the results of such a test, if taken, are inadmissible at trial, no inference as to results was possible. In addition, in the instant case, there was only one reference to the fact that Wilson had refused to take a polygraph in regard to the present litigation; in *Quigley*, there were numerous references, a fact which our Supreme Court found significant in producing reversible error.

Because of these differences, we do not find *Quigley* controlling. In comparison to *Quigley*, the reference to polygraph in the case *sub judice* was so ineffectual and inconsequential that it could in no way have obstructed the jury from a fair determination of the issues in the case based on relevant factors. If we were to find otherwise, it would mean that a passive mention of any irrelevant statement, which, if pursued to its most extreme extent would constitute prejudicial evidence, could result in reversal. We

therefore hold that the polygraph testimony in this case was not of the same offensive nature and quality as the testimony in *Quigley*.

Continuing with our analysis of the particular facts of the instant case, we note that the fundamental consideration in determining the admissibility of any evidence is its relevance to the fact sought to be proved. *Martin v. Soblotney*, 502 Pa. 418, 466 A.2d 1022 (1983). The stated purpose of the objected-to testimony in this case was to impeach appellant's testimony at trial that he had communicated with the fire department the day after the fire. The lower court accepted this reason for the admission of the polygraph testimony and allowed it to be admitted for this limited purpose. On review, we would not conclude that the polygraph testimony was particularly relevant for the stated purpose. The evidence which directly impeached appellant's statement at trial was the reading of his prior statement at the deposition, which statement straightforwardly contradicted the trial testimony concerning whether appellant had contacted the fire department. The testimony of appellant's answer to counsel's polygraph question seems to us a tangential line of questioning with regard to impeaching his statement at trial. We would not say the testimony had no relationship to the statement about the fire department but the relationship is at best a very tenuous and indirect one. On this basis, we conclude that the lower court went beyond the bounds of its discretion in permitting inquiry into this essentially non-relevant area.

Despite this conclusion, we must still determine whether the admission of the polygraph testimony was harmless error, or of such a magnitude that if a new trial were granted, a different verdict would result. *See Robertson v. Atlantic Richfield, supra*. We have reviewed the entire record of the trial and cannot conclude that a different outcome would ensue. We note that there was no reference to polygraph test *results*, since appellant did not actually submit to a polygraph. Therefore, the type of highly prejudicial polygraph testimony to which the courts have object-

ed was not present in this case. In addition, there was testimony at trial, by other witnesses, which supported the defense's version of events. Thus, even if the objected-to testimony had been excluded, the jury had sufficient facts before it to reach the same verdict as it did with the inclusion of the testimony. The polygraph testimony, as recorded, could not have affected the appellant's credibility before the jury because he explained his reason for refusing the testimony, i.e., on the advice of his counsel. Consequently, we agree with the lower court that the damage was not so great as to require a new trial, because the testimony was not that appellant had flatly refused to take a polygraph, but that his attorney had advised him not to submit to one because of the inadmissibility of such testimony. It seems reasonable to conclude that this response muted the potential adverse impact of the polygraph reference. For all of these reasons, we conclude that the lower court did not err in refusing to grant appellant a new trial on this basis.

Appellant's next contention on appeal is that the lower court erred in granting a non-suit as to Count II of his complaint, which alleged a cause of action in fraud and deceit against appellee. He contends that the appellee's scheduling of a deposition of him by letter of May 20, 1987 as well as the communications of appellee's field claims adjustor, Mr. Les Misko, to the police established a cause of action for fraud and deceit.

A motion for compulsory nonsuit will only be granted where it is clear that a cause of action has not been established. *Storm v. Golden*, 371 Pa.Super. 368, 373, 538 A.2d 61, 63 (1988). "[T]he plaintiff must be given the benefit of all favorable evidence along with all reasonable inferences of fact arising from the evidence, resolving any conflict in the evidence in favor of the plaintiff." *Id.*

The essential elements of a cause of action for fraud or deceit are a misrepresentation, a fraudulent utterance thereof, an intention to induce action thereby, justifi-

able reliance thereon and damage as a proximate result. *Neuman v. Corn Exchange National Bank & Trust Co.*, 356 Pa. 442, 51 A.2d 759, *supplemented* 356 Pa. 442, 52 A.2d 177 (1947); *Borelli v. Barthel,* 205 Pa.Super. 442, 211 A.2d 11 (1965). To be actionable, a misrepresentation need not be in the form of a positive assertion but is any artifice by which a person is deceived to his disadvantage and may be by false or misleading allegations or by concealment of that which should have been disclosed, which deceives or is intended to deceive another to act upon it to his detriment. *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 464 A.2d 1243 (1983). Concealment can be a sufficient basis for finding that a party engaged in fraudulent conduct, provided that the other requisite elements of fraud are established. *Mancini v. Morrow,* 312 Pa.Super. 192, 458 A.2d 580 (1983). While concealment may constitute fraud, however, mere silence is not sufficient in the absence of a duty to speak. *Smith v. Renaut,* 387 Pa.Super. 299, 564 A.2d 188, 192 (1989).

In the instant case, the evidence adduced at trial shows that it was standard policy for appellee to investigate insurance claims in excess of twenty thousand dollars, as was appellant's claim. As part of the investigation, the company decided to take a statement under oath from the claimant, appellant, as is required under the terms of the insurance policy. Thus, the deposition of appellant was requested by letter of May 20, 1987, and subsequently scheduled for June 5, 1987. After the deposition had been scheduled, Mr. Misko contacted the Allegheny County Police to request some time with one of the detectives to discuss the police investigation of appellant.

On June 4, 1987, Mr. Misko met with the detectives and was told by them that they planned to arrest appellant the next day, June 5, 1987. Mr. Misko was not informed by them as to when the warrant for appellant's arrest had been issued or when the criminal action against him had been filed. Misko also testified that he did inform the police officers that appellant would be in the Frick Building

for a deposition the following day, but did not make arrangements with them to have appellant arrested. When the police learned that appellant would be present at the Frick Building on the next day, the decision was made to arrest him there as a matter of convenience due to the close proximity of the Frick Building to the detectives' office.

We cannot conclude that these facts constituted a cause of action for fraud or deceit. The letter of May 20, 1987, despite appellant's allegations, simply contained no misrepresentations. As to Misko's "concealment" of the police plan to arrest appellant, this is not the type of concealment which would constitute the basis of a cause of action for fraud. Misko did not set up the deposition with knowledge of the impending arrest. Nor did the deposition's scheduling have any connection with the criminal action. Misko only learned of the police' plan to arrest appellant the day before its actual occurrence.

Misko was under no duty to advise appellant of the knowledge he had acquired. The police investigation was a separate one from the claims investigation of which the deposition was a part. The coincidence of appellant's arrest at the site of the deposition due to considerations of police convenience was not the type of information that Misko was required to disclose. Had the arrest not occurred there, it is certain to have occurred elsewhere, and Misko would not have been required to advise appellant of such a fact. In addition, the deposition was scheduled because the policy under which appellant claimed benefits required such a proceeding. Thus, Misko's actions did not induce appellant to submit to deposition; he was required to do so under the terms of the policy if he wished to proceed with his claim for fire loss benefits. For all of these reasons, we conclude that the lower court did not err when it granted appellee's motion for a non-suit on the cause of action based on fraud and deceit.

Judgment affirmed.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting:

I would grant a new trial on the ground that the trial court erred in failing to declare a mistrial after Appellee's counsel intentionally introduced evidence of Appellant's refusal to take a polygraph examination upon the request of Donegal Mutual's attorney.

Although the majority holds that the testimony elicited concerning Appellant's refusal to take a polygraph was irrelevant,[1] nevertheless, it finds that a new trial is not warranted for the reason that there was no reference to the test results. The majority also distinguishes the recent *Quigley* decision from the instant case on the basis that since Appellant never submitted to a test, no inference as to results was possible, that the refusal to take the test was not mentioned repeatedly, and because Appellant explained his reasons for not submitting to the test. [citation omitted]

I disagree. A trial court is required to grant a mistrial when the prejudicial admission of information may reasonably be said to have deprived a party of a fair and impartial trial. *Commonwealth v. Rolison*, 473 Pa. 261, 274, 374 A.2d 509 (1977); *Commonwealth v. Brinkley*, 505 Pa. 442, 452, 480 A.2d 980 (1984). I am convinced that the evidence of Appellant's refusal to undergo a polygraph examination so tainted the proceedings that he was deprived of a fair and impartial trial, and a new trial is required to correct this error.

In the recent decision by the Pennsylvania Supreme Court, *Quigley v. Philadelphia Civil Service Commission*, 528 Pa. 195, 596 A.2d 144 (1991), the court cited with

---

1. The majority states, "whether or not to admit evidence is within the discretion of the trial court and will not be reversed absent a manifest abuse of discretion" [citation omitted]. I agree with my colleague, Judge Wieand, in *Commonwealth v. Wagner*, 383 Pa.Super. 128, 556 A.2d 462, 466 (Wieand, J., concurring), that the courts should stop making the misleadingly broad statement that the admissibility of evidence is discretionary. The admissibility of evidence is determined by the rules of evidence, and the better approach is to state that a determination of the *relevancy* of evidence requires an exercise of discretion and will not be reversed absent an abuse of that discretion.

approval *Township of Silver Spring v. Thompson,* 90 Pa.Commonwealth Court, 456, 496 A.2d 72 (1985) and *Commonwealth v. Johnson,* 441 Pa. 237, 272 A.2d 467 (1971), which held that any references, explicit or implied, to the results of lie detector tests are *inadmissible for any purpose,* [emphasis added].

*Silver Spring* also reaffirmed the unreliability of lie detector tests, noting that there was no concrete evidence of developments in this field which would make polygraph results any more scientifically reliable than when the court held in *Johnson, supra,* 441 Pa. at 240, 272 A.2d 467, that references to a lie detector test are not permitted because they raised the impermissible inference that the results carried the weight of scientific evidence in certifying the truth of a statement. *See also, Commonwealth v. Gee,* 467 Pa. 123, 354 A.2d 875 (1976).

The *Quigley* decision also narrowed the holding in *McMullin Appeal,* 41 Pa.Commonwealth Court. 474, 401 A.2d 572 (1979), which held that references to a polygraph examination without mentioning the results of that examination were not prejudicial where examination results were not relied on and the findings were supported by other substantial evidence. *Quigley* held that references at trial to a polygraph test, and the mere inference that could be drawn from these references, i.e., that the subject had passed the test, was sufficient to taint the proceeding and cause incurable prejudice, even though there was no explicit mention of the results.

The majority, in distinguishing the instant case from *Quigley,* states that because Mr. Wilson refused to take the exam, "the inference which our Supreme Court found so offensive in *Quigley,* that the witness had passed the examination could not possibly have been drawn here." However, it is clear that the fact-finder would equally draw the opposite inference, that Appellant refused to take the exam because he was lying, which would be equally offensive. A references to a witness' willingness or unwillingness to take a lie detector test raises an inference as to the test result,

which in turn unavoidably raises the issue of credibility. *Johnson, supra.*, 441 Pa. at 240, 272 A.2d 467. It is the inference of credibility or lack of credibility which is the problem, not whether the witness would have passed or failed the lie detector test.

Nor am I persuaded that Appellant's explanation for his refusal to take the test reduced the inference that he was lying. In *Johnson, supra.*, 441 Pa. at 242, 272 A.2d 467, *cited in, Quigley, supra.*, curative instructions which charged the jury to limit its considerations strictly to the fact that the test had been administered were considered insufficient to remove the prejudice. If such instructions were insufficient, I can not accept that a mere explanation could have lessened the prejudice. Moreover, Mr. Wilson's statement that he had refused to take the test because his attorney had advised him not to take it, is an extremely weak excuse in light of his earlier testimony that he had offered to pay for polygraph tests for various municipal officials with whom he had an ongoing dispute. (N.T., May 24, 1990 at 108).

Justice Larsen, who concurred in the finding that the appellant had been deprived of due process by the introduction of the polygraph evidence in the administrative proceeding, stated, "We must be scrupulous in insuring that every person who is accused of wrongdoing and whose liberty and/or *substantial property interests are at risk* is afforded a fair trial before a fair and impartial tribunal." *Quigley, supra.*, (Justice Larsen concurring and dissenting) (emphasis added).

I believe that we must be equally scrupulous in the present action. In the context of personal injury actions, the supreme court held in *Cook v. Philadelphia Transportation Co.*, 414 Pa. 154, 199 A.2d 446 (1964), that the defendant was foreclosed from mentioning the name of a bar in the vicinity of an accident on the basis that there was no evidence that any of the participants in the accident had been drinking on the premises, while it was obvious that the plaintiff could have been irreparably prejudiced by testimo-

ny that she came out of a place called the "Crazy Bar". Mr. Justice Musmanno eloquently stated:

> [T]he 'Crazy Bar' was wholly alien to the accident, in no way contributed to the happening or an explanation of the accident, and the only possible advantage the defendant could have obtained by filling the jury's ears with the cry of 'Crazy Bar,' would have been an advantage it was not entitled to, but which might well have brought about a mistrial. *Id.,* 414 Pa. at 158, 199 A.2d 446.

*See also, Morreale v. Prince,* 436 Pa. 51, 258 A.2d 508 (1969), (in which a reference to the Club 30, an "after-hours" bar in Pittsburgh, required reversal of a verdict because it was unduly prejudicial.)

In the present case the intentional reference to Appellant's refusal to submit to a polygraph gave the defendant/insurance company an advantage to which it was not entitled. It is certainly no less prejudicial to refer to a refusal to submit to a lie-detector test than it is to mention the name of a bar.

Furthermore, the testimony concerning this refusal was not, as the majority holds, "a passive mention" of Wilson's refusal to take a lie detector test. [citation omitted] On the contrary, it was responsive to a direct question posed by the defendant's attorney. Furthermore, it is unlike *Commonwealth v. Brinkley,* 505 Pa. 442, 480 A.2d 980 (1984), and *Leonard v. Pennsylvania State Police,* 125 Pa.Commonwealth Court 641, 558 A.2d 174 (1989), on which the majority relies, in that testimony concerning lie-detector tests was considered non-prejudicial because the witnesses blurted out emotional and unresponsive answers to questions without mentioning the results of the tests. In these cases the party examining the witness was not attempting to pursue an unfair advantage by calling attention to the witness' willingness or unwillingness to submit to the exam, whereas, here, as in *Quigley,* Donegal intentionally elicited this information from Appellant in a narrowly framed question in order to call attention to Appellant's lack of credibility.

Therefore, I would find that Appellant's testimony concerning his unwillingness to take a lie-detector test had no probative value and was highly prejudicial. On this basis I would grant Appellant a new trial.