J-A18028-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| JENS KLEIN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KATHERINE GLADSTONE | : | No. 1808 WDA 2018 |

Appeal from the Order Entered November 27, 2018
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD 15-008881

BEFORE:  BOWES, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                 FILED JANUARY 07, 2020

Jens Klein (Husband) appeals from the order granting the petition filed by Katherine Gladstone (Wife) to enforce a separation agreement between the parties.  Husband argues that the trial court erred by concluding that Wife was entitled to a lump sum payment of $25,000.  He asserts that the agreement pertaining to the lump sum payment was ambiguous.  Husband further claims that he satisfied his obligations under the agreement by making other payments to Wife.  Finally, he argues that Wife fraudulently induced him to enter the agreement.  We affirm.

The trial court summarized the facts and procedural history of this matter as follows:

The parties married in 2008 and separated in 2013.  They are the parents of one daughter (Child).  At separation, the parties

entered into a July 19, 2013 agreement[1] which resolved some of their economic claims. The provision at issue required Husband to pay $25,000 to Wife in two lump sums—$12,500 prior to Wife's August 2013 move to New York City with Child and the remainder "shortly thereafter." The parties' agreement also provided that Husband was to pay a trial amount of $1,250 per month in child support until January of 2014, when support could be revisited and likely increased.

Wife filed a petition to enforce the agreement and, on November 15, 2017, [the trial court] appointed the Special Master to hear Wife's claim. Wife alleged Husband never paid her the $25,000. The Master heard the case on February 5, 2018, with the parties as the only witnesses. At [the hearing before the Master], Husband raised two defenses, the first and foremost being his allegation that the agreement was invalid due to fraud in the inducement. Husband claimed that Wife concealed her romantic involvement with another woman with whom she eventually cohabited in New York. He claimed he never would have signed the agreement had he known of Wife's relationship and that, upon learning of the relationship, he unilaterally rescinded the agreement.

The only other defense Husband raised to Wife's enforcement action was that he actually had complied with the agreement, making payments to Wife over and beyond the agreement's contemplated $1,250 monthly child support payments. Husband submitted his bank statements as evidence of these payments. At

_____

[1] The agreement provided, among other things, the following: (1) Wife and Husband would move to New York City "separately but together;" (2) Wife and Child "can live in an apartment that [Wife] has found and will sublease, and [Child] will attend one of the very good public schools in that area;" (3) Husband will pay child support in the amount of $1,250 per month; and (4) "a separate lump sum of $25,000 will be provided to [Wife] over the course of the next several months, $12,500 of this will be provided before the move in August 2013; the rest will be paid shortly thereafter, as per a separate written agreement." See Agreement, 7/9/2013. Further, the agreement provided that "[t]his is by no means a comprehensive list. There are still many outstanding issues including, but not limited to, company assets, etc. We will resolve those in the near future in a separate written agreement but for now we agree to the terms above . . . ." Id.

trial, Husband's testimony was equivocal. When questioned, Husband claimed the payments were for both child support and toward the $25,000 but when asked if this represented an acknowledgement of his obligation to pay the $25,000, he demurred and asserted the payments were "just money I'm sending to my daughter." No evidence was entered that Husband made either lump sum $12,500 payment.

The Master found Husband to be in violation of the July 19, 2013 agreement and recommended that he pay Wife the $25,000 owed within 45 days of a final order. He denied Wife's claim for child support as well as her claim for attorney fees, finding that Husband demonstrated child support payments and noting that [W]ife did not file a support complaint.[2]

Both parties filed exceptions,[3] which [the trial court] dismissed on November 27, 2018.[4] Husband filed a motion for reconsideration and sought to reopen the record, citing criminal charges of grand larceny Wife currently faces in New York State.

While the averments of Husband's motion to reconsider, if true, raise questions regarding Wife's trustworthiness, they do not alter [the trial court's] finding that the parties entered into a valid and enforceable agreement in July of 2013. [The trial court] denied the motion on December 20, 2018.

_____

[2] In denying Wife's request for counsel fees, the Master stated that "Husband's attempts to invalidate the agreement based upon what he characterizes as Wife's surreptitious intentions to enter the agreement [] may be inaccurate, but do not rise to the level of . . . conduct necessitating an award of . . . counsel fees." See Master's R. & R., 4/24/18, at 3.

[3] Husband raised two exceptions to the Master's report: (1) the Master erred "in finding that a valid enforceable agreement existed between the parties," and (2) the Master erred "in awarding Wife $25,000 within 45 days." Husband's Exceptions to Master's R. & R., 4/24/18, at 1. In his supporting brief, Husband argued that Wife fraudulently induced him to enter the agreement by failing to disclose that she was in a romantic relationship with a woman.

[4] The trial court also adopted the Master's findings.

Trial Ct. Op., 2/26/19 at 2-4 (record citations omitted and some formatting altered).

On December 27, 2018, Husband filed a timely notice of appeal. He also timely filed a court-ordered Pa.R.A.P. 1925(b) statement.[5] The trial court issued a Rule 1925(a) opinion addressing Husband's claims.

_____

[5] Husband raised the following issues in his Pa.R.A.P. 1925(b) statement:

> 1.   The trial court erred in finding a valid enforceable agreement that required Husband to pay Wife $25,000 when the provision in question states, "that a separate lump sum of $25,000 will be provided to [Wife] over the course of the next several months. $12,500 of this will be provided before the move in August 2013; the rest will be paid thereafter, as per a separate written agreement" when there was no provision that it was to be provided in any specific manner or amount and no separate written agreement for the second $12,500 as introduced or testified to at trial.
>
> 2.   The trial court erred in finding a valid enforceable agreement that required Husband to pay Wife $25,000 when the agreement states "$25,000 will be provided…" and the term "provided" is ambiguous.
>
> 3.   Assuming arguendo that an [a]greement existed, the trial court erred in finding that Wife was still due monies under the [a]greement, when Husband demonstrated that he paid Wife, or Wife took, in excess of $12,500 before and after the date of the alleged [a]greement.
>
> 4.   The trial court erred in failing to find that Wife engaged in Fraud in the Inducement thus invalidating and/or voiding any alleged [a]greement.

Husband's Rule 1925(b) Statement, 1/28/19.

On January 19, 2019, Wife filed a motion to enforce the trial court's November 27, 2018 order. On January 22, 2019, Husband filed an application for stay with this Court. That same day, the trial court entered an order stating that if this Court denied Husband's application, then the trial court would automatically grant Wife's motion to enforce the agreement. The following day, we denied Husband's application. See Order, 1/23/19.

On February 12, 2019, Husband filed a petition for stay with the trial court. See Husband's Pet. to Stay, 2/12/19. Husband stated that although he previously discovered that Wife "made multiple unauthorized transfers and withdrawals" from the business account, "at that time[,] Husband did not have actual proof." Id. at 4-5. Husband attached several exhibits to his petition, including two withdrawal slips from the business account for $12,500 and $3,000 that Wife signed on July 11, 2013.[6] On February 19, 2019, the trial court denied Husband's petition. See Order, 2/19/19.

Husband raises the following issues on appeal:

1. Whether the trial court erred in finding a valid enforceable agreement that required Husband to pay Wife $25,000 when the provision in question states, "That a separate lump sum of $25,000 will be provided to [Wife] over the course of the next several months. $12,500 of this will be provided before the

_____

[6] We note that although these materials appear in the reproduced record, they were not included in the certified record filed with this Court. Therefore, we cannot consider them. See Commonwealth v. Preston, 904 A.2d 1, 7 (Pa. Super. 2006) (stating that this Court is limited to "the materials in the certified record when resolving an issue" and explaining that "any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record"); see also Pa.R.A.P. 1921.

move in August 2013; the rest will be paid thereafter, as per a separate written agreement" when there was no provision that it was to be provided in any specific manner or amount and no separate written agreement for the second $12,500 as introduced or testified to at trial and the word provided is ambiguous?

2. Whether the trial court [erred], assuming arguendo that an agreement existed, in finding that Wife was still due monies under the agreement, when Husband demonstrated that he had paid Wife, or Wife took, in excess of $12,500 before and after the date of the alleged agreement.

3. Whether the trial court erred in failing to find that Wife engaged in fraud in the inducement thus invalidating and/or voiding any alleged agreement?

Husband's Brief at 4 (some formatting altered).[7]

All of Husband's claims challenge the validity of the parties' settlement agreement. "A marital support agreement incorporated but not merged into the divorce decree survives the decree and is enforceable at law or equity. A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise." Kraisinger v. Kraisinger, 928 A.2d 333, 339 (Pa. Super. 2007) (citations omitted). "[A]bsent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." Stackhouse v. Zaretsky, 900 A.2d 383, 386 (Pa. Super. 2006) (citation omitted).

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is de novo and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision.

_____

[7] Wife did not file a brief.

However, we are bound by the trial court's credibility determinations.

When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

*Kraisinger*, 928 A.2d at 339 (citations omitted).

When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties understanding. The court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation. When the terms of a written contract are clear, this Court will not re-write it or give it a construction in conflict with the accepted and plain meaning of the language used.

*Lang v. Meske*, 850 A.2d 737, 739-40 (Pa. Super. 2004) (citations omitted); see also *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009) (explaining that "contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts" (citation and some formatting omitted)).

In his first issue, Husband challenges the trial court's interpretation of the following clause: "a separate lump sum of $25,000 will be provided to [Wife] over the course of the next several months, $12,500 will be provided before the move in August 2013, the rest will be paid shortly thereafter as per a separate written agreement." Husband's Brief at 9. Husband argues that, in the context of the agreement, the term "provided" is ambiguous. Id. He further claims that, as drafted, the agreement "arguably does not require

- 7 -

Husband to pay anything" and "certainly does not require the lump sum payments found by the trial court." Id. Husband asserts that "Wife took the first $12,500 and the second $12,500 was to be paid per separate agreement, which never occurred." Id. at 10. Husband therefore argues that "it was an error for the trial court to find an enforceable provision requiring Husband to pay Wife. Id.

The trial court addressed Husband's claim[8] as follows:

Neither ambiguity in terms nor the lack of a separate agreement [were] raised at trial before the Master. Neither issue was raised in Husband's exceptions. Husband's exceptions raised only the following two issues: "(a) The Master erred in finding that a valid enforceable [a]greement existed between the parties; and (b) The Master erred in awarding Wife $25,000 within 45 days." Husband briefed only that Wife was guilty of fraud in the inducement, which justified his failure to pay the $25,000, and that there had been no testimony that Husband was capable of paying $25,000 within 45 days. The lack of a separate agreement was not mentioned once at trial nor at argument on Husband's exceptions.

"Matters not covered by exceptions [to a Master's report and recommendation] are deemed waived unless, prior to entry of the final decree, leave is granted to file exceptions raising those matters." Pa.R.C.P. 1920.55-2(b). As evidenced . . . in the history above, both parties filed exceptions from this Report; however the matters specified in Husband's . . . issues herein were not raised by him in his exceptions. Accordingly, the issues, which Husband failed to raise in his exceptions, are waived for appeal, as they must be raised at the first opportunity. Metzger v. Metzger, 534 A.2d 1057, 1058 (Pa. Super. 1987). Accordingly, by not raising or briefing these issues in his exceptions, Husband has waived them.

Were these issues not waived, [the trial court] would still find them unpersuasive. The language of the agreement may not be

_____

[8] Although Husband presented this claim as two separate issues in his Pa.R.A.P. 1925(b) statement, he has combined them into one issue on appeal.

> precise but it is far from ambiguous. The subject provision states: "A separate lump sum of $25,000 will be provided to [Wife] over the course of the next several months. $12,500 of this will be provided before the move in August 2013. The rest will be paid shortly thereafter, as per a separate written agreement." Husband's assertion that the term "provided" is ambiguous is meritless, as the agreement actually sets forth how the funds will be "provided"—one payment of $12,500 in August of 2013 and the rest within "the next several months." Even without a "separate written agreement," the intention of the parties is clearly set forth that the money was to be paid to Wife before and soon after her move.

Trial Ct. Op. at 4-5 (some formatting altered).

Based on our review of the record, we agree with the trial court that Husband waived this issue by failing to raise it in an exception to the Master's findings. See Pa.R.C.P. 1920.55-2(b) (stating that "[e]ach exception shall set forth a separate objection precisely[; m]atters not covered by exceptions are deemed waived"). Moreover, because the contract was clear and unambiguous with respect to the $25,000 payment, we discern no error of law in the trial court's analysis of this claim. See Lang, 850 A.2d at 739-40; see also Kraisinger, 928 A.2d at 339. Therefore, Husband is not entitled to relief on this issue.

In his next claim, Husband contends that even if the agreement was valid, he has already given Wife more than $25,000. Husband's Brief at 11. Husband argues that he fulfilled his obligations under the agreement because he "demonstrated that he had paid Wife, or Wife took, in excess of $12,500 before and after the date of the alleged agreement." Id. at 10. In support, Husband refers to evidence that he presented to the Master, including

personal bank statements showing payments to Wife in excess of $14,000 and his own testimony that "he had sent money to Wife in New York and she had taken money from the business account." Id.

The trial court addressed Husband's claim as follows:

> In his [next] issue, which was also not raised on exceptions but was argued at [the hearing before the Master], Husband argues that, because his bank statements demonstrate that Husband gave Wife more than the $1,250 monthly child support amount contemplated in the agreement, he has demonstrated that she is no longer entitled to the separate $25,000. As noted by the Master in his Report and Recommendation, Husband's bank statements, introduced in support of this contention, do not contain any reference to the two lump sum payments, and show payments in amounts close to the child support payments contemplated in the agreement.

> The parties' agreement provided for two separate economic payments—a distribution payment of $25,000, which was to be paid to Wife in two lump sums; and child support payments to be made on a monthly basis. Both the Master and [the trial court] found that the payments made from Husband's account and shown through [Husband's personal bank statements] related solely to child support.

> In fact, Husband specifically stated that he did not intend to comply with the agreement and that he did not make the payments toward the lump sum. He himself testified that the payments were for his daughter and related to the child support.

Trial Ct. Op. at 6 (some formatting altered).

Based on our review of the record, we agree with the trial court that Husband waived this issue by failing to raise it in an exception to the Master's findings. See Pa.R.C.P. 1920.55-2(b). Further, the trial court evaluated the witnesses' credibility and concluded that Husband's previous payments to Wife were unrelated to the $25,000 set forth in the agreement. See Kraisinger,

928 A.2d at 339. In light of the trial court's credibility determinations, we discern no abuse of discretion or error of law. See id. Therefore, Husband's claim warrants no relief.[9]

In his remaining issue, Husband argues that the trial court erred by denying relief on his claim of fraudulent inducement. Husband's Brief at 12. Husband argues that Wife concealed that she was moving to New York to continue a romantic relationship with another woman. Id. at 12. He also asserts that Wife made material misrepresentations that "the schools were better" and that she "had obtained suitable housing" in New York City. Id. Husband also claims that Wife misrepresented the fact that she "took large sums of money from the company bank account" before the parties signed the agreement. Id. at 13. Husband concludes that, "had he known the true facts, he would not have signed the [a]greement as written." Id.

A fraud in the inducement claim asserts that "an opposing party made false representations that induced the complaining party to agree to the contract." Toy v. Metro. Life Ins. Co., 928 A.2d 186, 205 (Pa. 2007)

---

[9] To the extent Husband relies on newly discovered evidence that Wife withdrew money from the business account, we reach the same result. Husband testified that in 2013, he discovered that Wife took "large amounts of money" from the business account. See N.T., 2/5/18, at 52. He also testified that he maintained online access to the business bank account before, during, and after he signed the agreement. Id. at 63-64. Therefore, even if he had properly preserved this issue, Husband's failure to produce the evidence at the Master's hearing or file a timely request for relief with the trial court is fatal to his claim.

(plurality) (citation omitted); see also Porreco v. Porreco, 811 A.2d 566, 570 (Pa. 2002).

To prove this claim, the party alleging fraud in the inducement must establish the following elements:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

Eigen v. Textron Lycoming Reciprocating Engine Div., 874 A.2d 1179, 1187 (Pa. Super. 2005) (citation omitted).

"A misrepresentation is material if the party would not have entered into the agreement but for the misrepresentation." Id. (citation omitted). However,

> [t]o be actionable, a misrepresentation need not be in the form of a positive assertion but is any artifice by which a person is deceived to his disadvantage and may be by false or misleading allegations or by concealment of that which should have been disclosed, which deceives or is intended to deceive another to act upon it to his detriment. Concealment can be a sufficient basis for finding that a party engaged in fraudulent conduct, provided that the other requisite elements of fraud are established.

Wilson v. Donegal Mut. Ins. Co., 598 A.2d 1310, 1315-16 (Pa. Super. 1991) (citations omitted). While "concealment may constitute fraud . . . mere silence is not sufficient in the absence of a duty to speak." Id.

Here, trial court addressed Husband's fraudulent inducement claim as follows:

- 12 -

Husband sets forth the only argument he made at trial and on exceptions - what his counsel called "the crux of our case" - that the agreement was invalid due to fraud in the inducement. Husband claims [that] Wife engaged in fraud by concealing from him her romantic involvement with another woman and, therefore, the agreement should not be enforced.

\*      \*      \*

Husband alleges that Wife misrepresented material facts to him on which he justifiably relied and which, when he discovered them not to be true, caused him to rescind the agreement with justification.

At trial and in his pleadings, Husband alleged that, prior to execution of the agreement, Wife concealed her romantic relationship with another woman. The provision, which is the subject of Wife's enforcement action, is one of property division. There was no evidence presented that there was any concealment of a financial nature. There was no evidence that the payment to Wife was contingent upon her remaining celibate, single, or heterosexual. Therefore, Wife's concealment was not of a material fact on which Husband relied to his detriment.

Husband claimed that Wife did not put their Child first, reside with her in a suitable apartment, or enroll her in a good school, as she promised to do in the agreement. Yet Husband did not file a motion to enforce the agreement, nor did he take any custody action for well over [two] years. He simply did not pay as agreed.

Husband agreed to provide Wife with $25,000 in two payments, one prior to her August 2013 move, and the other within a few months of the move. He now argues that, had he known that there was another romantic involvement, he would not have executed the agreement. That may in fact be true but it does not rise to the level of fraud such that his agreement with Wife should be deemed invalid.

Trial Ct. Op. at 7-8 (some formatting altered).

Based on our review, the record supports the trial court's finding that

Husband failed to establish his fraudulent inducement claim. See Eigen, 874

A.2d at 1187. As noted by the trial court, Husband testified that he did not

- 13 -

expect Wife to remain single or celibate after the separation. See N.T., 2/5/18, at 55. Instead, Husband stated that the sole purpose of the agreement was for Child "to have a better life." Id. at 71. Husband cites no authority for his position that Wife's failure to disclose her own romantic relationship should invalidate the contract, which settled the parties' dispute over portions of their marital property and the terms of their relocation to New York City. See id. Therefore, because Husband failed to establish Wife's concealment was material and her intent to mislead Husband and otherwise induce him to enter into the agreement, Husband cannot establish fraudulent inducement on that basis. See id.

Finally, to the extent Husband argues that Wife misrepresented facts about the schools and the apartment or concealed that she withdrew money from the business bank account, these claims are waived. See Pa.R.C.P. 1920.55-2(b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/7/2020